MARY A. HOGLE, Respondent, *v.* H. H. FRANKLIN MANU-FACTURING COMPANY, Appellant.

**Torts** — injury by article thrown from factory window by workman therein — liability of master.

Where the evidence warranted the jury in finding that a piece of iron which injured the plaintiff was maliciously thrown from a window of the defendant's factory by one of its workmen and that for more than a year it had been the practice of its workmen, maliciously, or in a spirit of mischief, to throw similar objects from the windows upon the premises adjoining, where the plaintiff lived, with the knowledge of the defendant, but without its consent and in violation of its orders, a recovery should be sustained. The court properly refused to hold "that there can be no recovery in this case unless the jury should find that this piece of iron was thrown upon plaintiff's premises as a necessary consequence of the work being carried on there or as an incident to it."

Where the complaint in an action to recover for such injury states a cause of action resting both on negligence and nuisance, and no request was made at the trial that plaintiff should elect, and the evidence shows that the practice of throwing missiles by defendant's workmen from the windows of its factory, although without defendant's consent and against its orders, had been continuous, that the defendant had been repeatedly notified of the practice and that it had failed to take reasonable and effective means to suppress the practice, a judgment for the plaintiff may be sustained upon either ground stated in the complaint.

Defendant's liability upon the ground of negligence rests, not on the throwing of the missiles, as they were not thrown in furtherance of defendant's business, but upon the fact that the defendant, although having knowledge of the facts, failed to use reasonable care to prevent them from being thrown.

Defendant's liability upon the ground of nuisance rests upon the principle that it is the duty of an owner of premises to prevent them from being a constant source of injury to others. If, while in full possession and control of his premises, he knows that an evil, injurious to others, exists thereon and he does not abate it within a reasonable time and under reasonable circumstances, he is guilty of suffering a nuisance to continue, and is liable for the injury resulting therefrom, without proof of negligence or its incidents.

*Hogle* v. *Franklin Mfg. Co.*, 128 App. Div. 403, affirmed.

(Argued October 4, 1910; decided October 25, 1910.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 11, 1908, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

For several years prior to the 21st of August, 1906, the plaintiff resided with her husband in a house on West Marcellus street in the city of Syracuse, the lease from James Doheny, the owner, being in the husband's name as lessee. The lot upon which the house stands is 34 by 100 feet, and the rear thereof adjoins the land of the defendant, upon which there is a large building several hundred feet long used for the manufacture of automobiles. Between the lot on which the defendant's factory stands and the lot occupied by the plaintiff and her husband, which for convenience will be called the plaintiff's lot, there is a vacant space ten feet wide which is not used for storage or dumping purposes, or for any purpose except the admission of light and air. At the rear of plaintiff's lot is a tight board fence six feet high, and the space between the fence and her house, 20 by 34 feet, is used as a garden. Each floor of the factory has windows overlooking the plaintiff's premises, and on each of said floors are many mechanics and laborers in the employ of the defendant.

For eighteen months prior to the 21st of August, 1906, the employees of the defendant had habitually thrown small pieces of iron, such as nuts, the ends of bolts and the like, from the upper windows of its factory upon the rear of the plaintiff's lot. Mr. Hogle, who was not at home much in the daytime, saw such objects thrown from the third story of the factory at least a dozen times, some of which struck his house and others fell in the yard at the rear. This was after six o'clock in the evening, but when the men were still at work in the factory. He took a handful of the nuts and bolts collected from the garden to Mr. Franklin, the president of the defendant, stated the facts to him, and said he wanted the practice stopped, for he was afraid some one would get

hurt. Mr. Franklin replied that he was glad to learn what had happened and would see that it was stopped. Mr. Doheny, the lessor of the plaintiff, complained on several occasions to the assistant manager of the defendant, who said he would do all he could to stop the annoyance.

The practice, however, continued and increased, although Mr. Franklin and his foreman forbade it and threatened to discharge any one who was seen to throw anything upon the plaintiff's lot. A little son of the plaintiff was hit by a nut when playing in the backyard. On another occasion a pail of dirty water was thrown upon him, and on still another tobacco spittle hit him on the head. Mrs. Hogle testified that she saw nuts, pieces of bolts, etc., thrown on her lot and at the children playing there on the average once a day from the spring of 1905 until in August, 1906. Once she saw a rat-tail file thrown from the window on the third floor and saw it pass over her little boy and strike the ground behind him. These objects, which for convenience counsel called missiles, came from the windows of defendant's factory and mainly from those on the third floor. She saw many of them when they were thrown by defendant's workmen from the windows of its factory.

On the 21st of August, 1906, she went out into her garden and looking up saw men at work and heard them talking by the windows of the third floor, which were open. As she was kneeling on one knee about ten feet from the rear of her lot to pull some radishes, she caught a side glance of some object coming from the direction of the third floor and at once was hit by a piece of iron upon her arm just below the shoulder. She produced the iron in court and the injury inflicted thereby was somewhat severe.

Upon the first trial, when the complaint was based wholly on negligence, she had a verdict, which was set aside by the trial justice upon the ground that as the acts of the defend-ant's workmen were not done within the scope of their employment, an action for negligence would not lie, but it was pointedly suggested in the opinion that an action for

nuisance was the proper remedy. The complaint was thereupon so amended as to rest both on negligence and nuisance. Upon the second trial also the plaintiff had a verdict and the judgment entered thereon was affirmed by the Appellate Division, one of the justices dissenting. The defendant now appeals to this court.

*Jerome L. Cheney* for appellant. The court's refusal to hold " that there could be no recovery in this case unless the jury should find that this piece of iron was thrown upon plaintiff's premises as a necessary consequence of the work being carried on there or as an incident to it " was error. (*Froomkin* v. *B. D. E. Co.*, 113 App. Div. 443 ; *Cosgrove* v. *Ogden*, 49 N. Y. 255 ; *Meehan* v. *Morewood*, 52 Hun, 566 ; 126 N. Y. 667 ; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 78 Hun, 524 ; *Collins* v. *Butler*, 179 N. Y. 156 ; *Girvin* v. *N. Y. C. & H. R. R. R. Co.*, 166 N. Y. 289 ; *Kennedy* v. *White*, 91 App. Div. 475 ; *Magor* v. *Hammond*, 183 N. Y. 387 ; *Wallace* v. *Casey Co.*, 132 App. Div. 35, 41 ; *Miller* v. *Wanamaker*, 11 N. Y. Supp. 786 ; *Walton* v. *N. Y. C. S. C. Co.*, 139 Mass. 556 ; *Walker* v. *H. & St. J. R. Co.*, 121 Mo. 575.)

*Frank C. Sargent* for respondent. The defendant was guilty of negligence, which caused the injury sustained by the plaintiff. (*Swinarton* v. *Le Boutillier*, 7 Misc. Rep. 639 ; *Fletcher* v. *B. & P. R. R. Co.*, 168 U. S. 135 ; *Dwyer* v. *D. & H. C. Co.*, 17 App. Div. 623 ; *Carpenter* v. *B. & A. R. R. Co.*, 97 N. Y. 494.)

VANN, J. The theory upon which the case was sent to the jury upon the second trial is shown by the following extracts from the charge of the trial justice: " I do not intend to talk to you about negligence or about a nuisance or about any other subject with a technical name. I want you to consider simply, in the light of common sense, what is due from one man to another, from one neighbor to another. * * * If my servant repeatedly, with my knowledge, even

if he is not engaged in my business, throws stones at you and injures you, I should do what I reasonably can to prevent that act on his part. In the first place, the servant is subject to my control. In the second place, he is occupying my land and from it he is committing a trespass upon yours; he is using my personal property to help along in that trespass and he is where he is and is able to commit that trespass because of my act in putting him there and keeping him there. \* \* \* If you find that the plaintiff was injured as she claims, and if you find that these trespasses were repeatedly and continuously committed by persons upon the defendant's property, the defendant concededly having notice that these trespasses were being committed, I say it is a question for you to determine whether or not the defendant used such reasonable efforts as it should have used to prevent their recurrence and so is liable because their recurrence was not prevented and because as a result the plaintiff received this injury of which she complains."

As the Appellate Division held, and as we think, the evidence warranted the jury in finding that the piece of iron which injured the plaintiff was maliciously thrown from a window of the defendant's factory by one of its workmen and that for more than a year it had been the practice of its workmen, maliciously, or in a spirit of mischief, to throw similar objects from the windows of its factory upon the premises adjoining where plaintiff lived, with the knowledge of the defendant, but without its consent and in violation of its orders.

The defendant contends, and its motion for a nonsuit was based on the ground, "that there can be no recovery in this case unless the jury should find that this piece of iron was thrown upon plaintiff's premises as a necessary consequence of the work being carried on there or as an incident to it." The refusal to so hold is the main assignment of error on this appeal.

While we all think that the recovery should be sustained, we differ somewhat as to the exact theory upon which it should be based. No request that the plaintiff should elect between

the theory of nuisance and that of negligence was made at the trial, and the complaint was adapted to either. The trial judge did not name the action, but treated it as an action on the case. If the evidence established a cause of action for negligence in failing to take reasonable precautions to suppress the evil practice, such as closing the windows or screening them with wire netting or setting a watch upon the men or some other of like character, the defendant cannot complain. Such negligence would rest not on the throwing of the missiles, as they were not thrown in furtherance of the master's business, but on not using reasonable care to prevent them from being thrown. In other words, it would rest on a relative and not on an absolute duty. If, on the other hand, the evidence established an action for nuisance, the rulings of the court were more favorable to the defendant than it was entitled to, because the liability for injury from a nuisance is not relative but absolute, and proof of negligence on the one hand and the absence thereof on the other is not required.

The line between protracted and habitual negligence and nuisance is not easily drawn, and facts may exist which call for damages on either theory when the pleadings are appropriate, as in this case, to either kind of relief. High authority is not wanting to sustain the judgment below on the ground of negligence pure and simple. Thus, in an important case, the plaintiff was a workman employed by the defendant railroad at its workshop in the city of Washington. When returning from his day's labor he stopped at the intersection of two streets to enable a repair train to pass him. For a long time prior it had been the custom of the defendant to allow its workmen, who went out on a repair train in the morning to bring back with them on their return in the evening sticks of refuse timber for their individual use as firewood, and these men were in the habit of throwing the sticks off the train while in motion at the points nearest their own homes, but they had been cautioned by the company not to injure any one in doing so. As the defendant's train passed the plaintiff such a piece of refuse wood was thrown from it

by one of the men and striking the ground rebounded, struck the plaintiff and injured him seriously. Upon the trial of an action to recover damages, after proving these facts, the plaintiff rested and defendant moved for a verdict in its favor and the motion was granted. Upon appeal to the Court of Appeals of the District of Columbia the judgment was affirmed, but upon further appeal to the Supreme Court of the United States it was reversed, on the ground that the jury could have found the defendant guilty of negligence. (*Fletcher* v. *Baltimore & Potomac R. R. Co.*, 168 U. S. 135.)

Mr. Justice Peckham, writing for all the judges, said: "Negligence on the part of the company is the basis of its liability, and the mere failure to prevent a single and dangerous act, as above stated, would not prove its existence. * * * If the act on the car were such as to permit the jury to find that it was one from which, as a result, injury to a person on the street might reasonably be feared, and if acts of a like nature had been and were habitually performed by those upon the car to the knowledge of the agents or servants of the defendant, who with such knowledge permitted their continuance, then in such case the jury might find the defendant guilty of negligence in having permitted the act and liable for the injury resulting therefrom, notwithstanding the act was that of an employee and beyond the scope of his employment and totally disconnected therewith. * * * It is not a question of scope of employment or that the act of the individual is performed by one who has ceased for the time being to be in the employment of the company. The question is, does the company owe any duty whatever to the general public, or, in other words, to individuals who may be in the streets through which its railroad tracks are laid, to use reasonable diligence to see to it that those who are on its trains shall not be guilty of any act which might reasonably be called dangerous and liable to result in injuries to persons on the street, where such act could by the exercise of reasonable diligence on the part of the company have been prevented? We think the company does owe such a duty, and

if through and in consequence of its neglect of that duty an act is performed by a passenger or employee which is one of a series of the same kind of acts and which the company had knowledge of and had acquiesced in, and if the act be in its nature a dangerous one, and a person lawfully on the street is injured as a result of such an act, the company is liable. Any other rule would in our opinion be most disastrous, and would be founded upon no sound principle." (See, also, *Swinarton* v. *Le Boutillier*, 7 Misc. Rep. 639; affd., 148 N. Y. 652; *Dwyer* v. *D. & H. Canal Co.*, 17 App. Div. 623.)

The defendant had reason to believe that missiles would be thrown from its premises upon those of the plaintiff in the future, as they had been continuously in the past, and that they might hurt some one. It took some precautions to prevent the evil, but they were not effective and the defendant knew they were not. It could not remain quiet and let the practice go on. The jury could properly say that in the exercise of reasonable care in the management of its own property so as to prevent an injury reasonably to be expected to its neighbor's property and person it should have taken further precautions and that it was negligent in not having done so. This would lead to an affirmance on the ground of negligence, the real ground upon which the case was sent to the jury.

I am personally of the opinion, however, that the practice complained of was a nuisance as matter of fact, if the jury so found. *Sic utere tuo ut alienum non lædas* is an old maxim of the law, which applies both to the use made and the use knowingly suffered to be made of one's own property while he is in full control thereof. It is a trespass for the owner of one lot to throw anything upon the adjoining lot of his neighbor. The defendant furnished the place from which and the means with which habitual trespasses, calculated to inflict personal injury, were committed on the adjoining premises of the plaintiff. The defendant knew of the practice and knew that it had existed a long time, and while some efforts were made to prevent it, the evil continued and even grew worse. An occasional trespass of this kind committed by

the defendant's workmen would not warrant a jury in finding it guilty of suffering or maintaining a nuisance, but when the practice became habitual and the injury was direct, substantial and well known, I think the duty of the defendant became absolute and that it was guilty of suffering a nuisance to continue on its land if it did not prevent the evil.

In a recent case, without attempting a general definition of a nuisance, we said that "if the natural tendency of the act complained of is to create danger and inflict injury upon person or property, it may properly be found a nuisance as matter of fact; but if the act in its inherent nature is so hazardous as to make the danger extreme and serious injury so probable as to be almost a certainty, it should be held a nuisance as matter of law." (*Melker* v. *City of New York*, 190 N. Y. 481, 488. See, also, *Sullivan* v. *Dunham*, 161 N. Y. 290; *McCarty* v. *Natural Carbonic Gas Co.*, 189 N. Y. 40.) While that definition implies that the act is that of the defendant, I think the same rule should apply when a series of acts extending over many months is committed by men in the employment of the defendant, to its knowledge, with its personal property and while standing on its premises, even if the acts are without the line of its business. Although the defendant did not commit the injuries nor sanction them, it suffered them to continue for so long a period as to make them its own, or so at least the jury could find. It is a nuisance for one to permit a crowd to habitually gather on his land and by boisterous singing, obscene language and other disorderly conduct to seriously annoy his next-door neighbor. It is immaterial whether the acts are committed by his own workmen or by strangers, so long as they are committed on his land, constantly and with his knowledge. It is the duty of the owner of premises to prevent them from being made a constant source of injury to others, and it is upon this principle that suffering a foul water closet to exist in a crowded neighborhood is held a nuisance. The decaying carcasses of animals, whether placed on his land by the owner or not, hogpens, cesspools, dangerous structures, explosives and the like, while

all are dependent on the surrounding circumstances and on the degree of danger or annoyance, may be found nuisances in fact. Although the mere ownership of land may impose no liability for a nuisance thereon, or committed therefrom, still if the owner suffers his premises to become the standpoint for the habitual infliction of injuries upon his neighbor, and such injuries could not be inflicted without standing on such land, he may be held liable by the jury as a principal. He suffers the evil to exist on his land, if, while in the full possession and control thereof, he knows that it exists thereon and he does not abate it within a reasonable time and under reasonable circumstances, both time and circumstances ordinarily being for the jury.

I think that upon the facts as they are presumed to have been found by the jury the defendant was guilty of suffering a nuisance to exist and continue on its premises, and that it is liable for the injury resulting therefrom to the plaintiff without proof of negligence or its incidents.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; WERNER, J., concurs on first ground stated in opinion.

Judgment affirmed.