DOROTHY FORD, as Administratrix of the Estate of DENNIS FORD, Deceased, Respondent, *v.* THE GRAND UNION COMPANY, Appellant.

244

(Argued May 1, 1935; decided July 11, 1935.)

*Philip L. Miller* and *Patrick J. Tierney* for appellant. The act of the manager was not in the scope of his employment, and had no connection whatever therewith. (*Oakes* v. *Marshall-Wells Hardware Co.*, 158 Wis. 165; *Fiocco* v. *Carver*, 234 N. Y. 219; *Joel* v. *Morrison*, 6 C. & P. 501; *Rodgers* v. *Tobias*, 225 S. W. Rep. 804; *Smith* v. *Peach*, 200 Mass. 504; *Hough* v. *Leech*, 187 Ark. 731; *Smith* v. *N. Y. C. & H. R. R. R. Co.*, 78 Hun, 524; *Haack* v. *Fearing*, 4 Abb. Pr. [N. S.] 297; *Buchanan* v. *Western Union Tel. Co.*, 115 S. C. 433; *Stone* v. *Eisen Co.*, 219 N. Y. 205.) The defendant cannot be held liable by reason of any non-delegable duty on its part as owner of the premises on which the shooting took place. The fact that the manager was in charge of the premises is immaterial. (*Sandles* v. *Levenson*, 78 App. Div. 306; 176 N. Y. 610; *Grimes* v. *Young*, 51 App. Div. 239; *Evers* v. *Krouse*, 70 N. J. L. 653; *Van Leet* v. *Kilmer*, 252 N. Y. 454.)

*B. Loyal O'Connell* for respondent. The trial court was warranted in submitting to the jury the question of negligence and the responsibility of the defendant therefor. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339; *Kirby* v. *Newman*, 239 N. Y. 470; *Trustees of Canandaigua* v. *Foster*, 156 N. Y. 354; *Appel* v. *Muller*, 262 N. Y. 278; *Klepper* v. *Seymour House Corp.*, 246 N. Y. 85; *Ward* v. *Trauts Realty Corp.*, 232 App. Div. 768; *Haywood* v. *N. Y. C. & H. R. R. R. Co.*, 128 N. Y. 596; *Weller* v. *McCormick*, 52 N. J. L. 470; *Murray* v. *Nelson*, 97 Vt. 101; *Rucco* v. *United Advertising Corp.*, 98 Conn. 241; *Kron* v. *Brock*, 144 Mass. 516; *Stranahan Bros. Catering Co.* v. *Coit*, 55 Ohio St. 398; *Chapman* v. *N. Y. C. R. R. Co.*, 33 N. Y. 369; *Buchanan* v. *Western Union Tel. Co.*, 115 S. C. 433; *Stone* v. *Eisen Co.*, 219 N. Y. 205; *Hogle* v. *Franklin Mfg. Co.*, 199 N. Y. 388; *Fletcher* v. *Baltimore & Potomac R. R. Co.*, 168 U. S. 135; *Kester* v. *Einhorn & Singer Dev. Corp.*, 232 App. Div. 144; 258 N. Y. 549; *Rosenholz* v. *Shattuck Co.*, 112 Misc. Rep. 468.)

LEHMAN, J. The defendant operates a chain of stores for the sale of groceries and meats. One of these stores is in the village of Dannemora. There, five men were employed by the defendant. Two employees conducted a department for the sale of meats. Three employees conducted a department for the sale of groceries. The manager of the grocery department had general charge of the store, at least so far as concerns matters that did not relate solely to the conduct of the meat department. He was designated as " manager " on one of the defendant's cards which was hung up in the store. He had the keys to the store and the combination of the safe. He kept the accounts of the store; dealt with customers who wished to have credit extended to them, and signed reports as " manager." He was, it fairly appears, charged with the general duty of seeing that the business of the store was conducted in an orderly manner. In so

far as the defendant owed a duty to the customers of the store or to the public, to use reasonable care to guard them against danger of bodily injury, the defendant intrusted performance of that duty to this employee, whom we shall hereinafter refer to as the "manager."

On the afternoon of March 8th, 1932, a high school boy, after school closed, brought a .22 calibre Remington rifle to the store. He displayed the rifle to some of the defendant's employees. Three of them and the school boy, to amuse themselves, took the rifle to the basement of the premises leased by the defendant, which was used ordinarily by the defendant for the storage of merchandise, and for heating the store. There, they nailed a piece of an orange box against a door, opening upon the street, and used it as a target. Each of them fired at least one shot at the target. Some of these shots penetrated the door. One of them struck and killed Dennis Ford, who was walking past the store. In this action against the defendant, judgment has been rendered against the defendant, placing upon the defendant the responsibility for his death.

Quite evidently the jury could, upon this evidence, find that four persons, three of them employees of the defendant, indulged in a frolic which unreasonably endangered the lives of persons lawfully using the street. They might be charged with negligence, and held responsible for the results of such negligence. Their employer may be held responsible for their acts, when performed in the course of their employment; but, concededly, the use of the basement of the store as a shooting gallery, by the defendant's employees, was not in the course of their employment. Temporarily, at least, they had abandoned their employment for the sole purpose of indulging their own desires. Their employment gave them access to the defendant's premises, otherwise it had no connection with their wrongful acts. Since the employees of the defendant were not then acting as the defendant's agents, the defendant cannot be charged, as principal, with responsi-

bility for their acts. The trial judge so ruled. The defendant has been held responsible for the death of plaintiff's intestate, not upon any theory that the defendant, acting through its agent or agents, has negligently caused such death, but upon the theory that the defendant negligently failed to control its employees and prevent them from using the defendant's premises in a manner which unreasonably endangered the public in the use of the street, upon which the defendant's premises abutted. If such a duty is placed by law upon the occupier of premises or upon an employer, he cannot, by attempted delegation to an employee or agent, escape responsibility for its defective performance or for complete failure to perform. The question, then, which must be decided upon this appeal is whether the law does impose such a duty upon an employer or upon the occupier of property abutting upon a public street and, if so, whether that duty is broad enough to cover the situation presented here.

" The occupier of property abutting on a highway is under a positive duty to keep his property from being a cause of danger to the public by reason of any defect, either in structure, repair, or use and management which reasonable care and skill can guard against." (Pollock on the Law of Torts [13th ed.], p. 542.) A person who erects or maintains an artificial structure upon his property may be charged with knowledge of defects in such structure, causing danger to the public, which reasonable inspection would disclose. There the law imposes upon those responsible for the existence of an artificial condition from which danger to the public may flow, the duty of exercising reasonable care and skill to guard against such danger. (Cf. American Law Institute, Restatement of the Law of Torts, § 368.) Again, each person in the use and management of his property, either in person or through agents, is, of course, bound to use reasonable care and skill, to guard against dangers to the public

arising from such use or management. (Cf. American Law Institute, Restatement of the Law of Torts, § 371.) That duty arises from the general rule that no one shall use his property in manner which trespasses upon the rights of others.

Here it cannot be said that the death of the plaintiff's intestate was due to defects in the structure, repair or physical maintenance, or to fault in its use or management by the defendant. The defendant used the property for the purpose of conducting there a grocery and meat store. It intrusted the management of the business to its employees. The use of the basement as a shooting gallery was no part of the use to which the defendant put the property, and was no part of the defendant's management of the property in connection with such use. The danger to the public from the use of the basement door as a target in shooting thus did not constitute a "defect" in defendant's use or management of its premises and did not arise from an activity carried on there by the defendant.

We then come to the question whether the defendant was under any positive duty to guard the public from dangers flowing from a use of the property, not authorized by the defendant, by visitors to the property or employees acting outside the scope of their employment. Ordinarily a person owes no duty to members of the public at large except to avoid injury to them by forces set in motion by such person or those acting as his agents. Even the duty to exercise reasonable care in the maintenance of the physical condition of structures upon the property and in its use and management may be brought within the general rule. Here it is asserted that the duty may go further and extend to the control of others, where such control can be effectively exercised. There is some authority for the assertion that, at least in some circumstances, such a duty exists, but no such duty has been precisely defined in any judicial decision called to our

attention. (Cf. Harper and Kime, " The Duty to Control the Conduct of Another," 43 Yale Law Journal, 886, esp. pp. 896 and 897.) The duty, if any, is certainly not absolute. The owner of property not inherently dangerous, who does not knowingly permit others to put the property to a dangerous use, is not subject to any absolute duty to prevent unauthorized persons from putting it to a dangerous use. Here there must be at least notice that a dangerous use is threatened, and perhaps acquiescence in such use. Again, where there is no notice that an employee is in the habit of acting in a manner dangerous to others, there is no duty to control the actions of the employee outside the scope of his employment. Such limitations, at least, are dictated by fundamental principles of tort liability. Without them there would be no room for the doctrine that a person is responsible only for the result of his own fault or the fault of his servants, acting within the scope of their employment.

In some cases, nevertheless, the possessor of property used for business has been held liable for failure to control his servants, though acting outside the scope of their employment, or other persons permitted to come upon or use such property. It is to be noted, however, that even in these cases, the courts held that the duty was not absolute, but relative. It arises only where, from the nature of the authorized use of property or from a course of conduct of visitors or of employees employed upon or in connection with the property, the possessor has notice that the use of his property, by persons acting without his authority but whom he could control, may cause danger to members of the general public. When such duty exists, it is limited to the exercise of skill and care commensurate to the danger which may reasonably be anticipated.

So it was said in *Fletcher* v. *Baltimore & Potomac R. R. Co.* (168 U. S. 135, 138, 139, 140) that " a railroad company is bound to use ordinary care and caution to avoid injuring persons or property which may be near its track.

This is elementary. (Shearman & Redfield on Negligence [3d ed.], § 477, and cases cited in notes.) The duty to use ordinary care and caution is imposed, as we think, upon the company to the extent of requiring from it the use of reasonable diligence in the conduct and management of its trains, so that persons or property on the public highway shall not be injured by a negligent or dangerous act performed by any one on the train, either a passenger or an employee acting outside and beyond the scope of his employment. * * * Negligence on the part of the company is the basis of its liability, and the mere failure to prevent a single and dangerous act, as above stated, would not prove its existence. * * * It is not a question of scope of employment or that the. act of the individual is performed by one who has ceased for the time being to be in the employment of the company. The question is, does the company owe any duty whatever to the general public, or, in other words, to individuals who may be in the streets through which its railroad tracks are laid, to use reasonable diligence to see to it that those who are on its trains shall not be guilty of any act which might reasonably be called dangerous and liable to result in injuries to persons on the street, where such act could by the exercise of reasonable diligence on the part of the company have been prevented. We think the company does owe such a duty."

The duty resting upon an employer who occupies property for a business use to use reasonable care to prevent injury to others by negligent or dangerous acts performed upon the employer's premises, by employees acting outside and beyond the scope of their employment is not confined to railroad companies. In *Hogle* v. *Franklin Mfg. Co.* (199 N. Y. 388) the rule formulated in *Fletcher* v. *Baltimore & Potomac R. R. Co.* (*supra*) was applied by this court to a manufacturer. There it was held that responsibility rests upon an employer to take reasonable precautions to prevent missiles from being

thrown from the employer's premises by employees, though acting against the employer's orders, where the employer knows that it was the custom of his employees to disregard such orders.

While such cases are, apparently, exceptions to the general rule that a person is not under a duty to exercise any care or skill to protect others against damage from causes which are not set in motion by him or his agents, they are in truth merely instances of the application of the general rule in a special field. Where the possessor of property invites or permits others to use his property, he creates a condition in which, through improper use of that property, others may be injured. A use of property which trespasses upon the rights of others is unlawful. By acquiescence in the misuse of his property by others, an owner may become, for practical purposes, a participant in such misuse. Especially where there is acquiescence in misuse of his property by employees, though outside the scope of their employment, the lax control of the employer may be regarded as a cause concurring with the wrongful acts of the employees in producing resultant injury to others. Then the owner of the property or the employer is under a duty to exercise reasonable care to prevent injury which, as a reasonably prudent man, he should know may otherwise result. Indeed, the problem presented in each case is not so much whether the duty exists, where the employer has knowledge or notice that lax control may result in injury to others, but whether in the particular case such knowledge or notice was present.

The rule has been formulated in the Restatement of the Law of Torts as follows:

" A master is under a duty to exercise reasonable care so to control his servant while acting outside the course of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if

" (a) the servant

" (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

" (ii) is using a chattel of the master, and

" (b) the master

" (i) knows or has reason to know that he has the ability to control his servant, and

" (ii) knows or should know of the necessity and opportunity for exercising such control." ( § 317.)

At least under the conditions there defined, there should be no doubt that a duty to use reasonable care to control his servants rests upon an employer. Failure to control would, under such circumstances, be indistinguishable from acquiescence in a wrong which without such acquiescence could not occur. So, here, if the defendant had been an individual who personally managed the store and in the course of such management knowingly acquiesced in the use of the basement as a shooting gallery by his employees, for their own amusement, it can hardly be doubted that the employer might be held liable for his own negligence in failing to control his servants. Does a different result follow where, as here, the employer delegated to an agent or servant authority to conduct in orderly fashion the business carried on by employees upon the premises?

Notice to an agent while acting within the scope of his duties constitutes notice to a principal. Indeed, in the case of a corporation, which can act only through agents, notice can be conveyed in no other way. So, too, acquiescence by an agent in a wrong may constitute acquiescence by a principal if such acquiescence falls within the general scope of his duties. Both in *Fletcher* v. *Baltimore. & Potomac R. R. Co.* (*supra*) and in *Hogle* v. *Franklin Mfg. Co.* (*supra*) the defendants were corporations, upon whom responsibility was cast for injuries resulting from acts of their employees, outside of and beyond the scope of their employment, because, after the corporate agents in charge

of the property and business of the corporations had notice of a course of conduct of employees which, if permitted to continue, would cause danger to others, they failed to exercise reasonable care to stop such course of conduct.

In the case at bar the defendant's employees did not customarily amuse themselves by shooting a rifle upon the premises, and, so far as appears, had never previously indulged in other dangerous play. Thus, until the moment when preparations for the shooting began, on the afternoon of the fatal accident, the defendant and the manager of its store had no notice that the store employees might so conduct themselves as to create an unreasonable risk of injury to others; and were under no duty to use any care to obviate a danger of which they had no notice or knowledge. Then, however, the store manager did obtain knowledge that the employees were conducting themselves so as to create an unreasonable risk of injury to others, and then, if ever, the duty arose to use reasonable care to stop such conduct. The manager of the store not only failed to use such care but, regardless of his duties to his employer, joined with the other employees in their dangerous conduct.

Here there was more than acquiescence by the manager in such conduct; there was actual participation therein, but the beginning of participation in the frolic constituted temporary abandonment of employment. From that moment the manager was acting as an individual and not as agent of the defendant. Thus, even though we assume that knowledge was conveyed to the manager, and through him to the defendant, that danger to the public might ensue unless reasonable care were exercised to prevent such danger, at the same moment when duty to use reasonable care arose, the defendant, without fault of its own, was left without a representative or agent who could perform that duty. No reasonable care would have enabled the defendant to foresee such a contingency, and

after it occurred even the highest degree of care would not have enabled the defendant to prevent the injury which followed. In such circumstances, we think, the defendant cannot be said to have failed in the exercise of reasonable care.

True, if the fault of the defendant's manager had been less; if, instead of abandoning the defendant's employment and joining in the frolic, he had continued his duties as manager and then with knowledge of danger had failed to exercise any power of control over the other employees, perhaps the defendant might have been held liable for his negligence. That we do not decide; but if such liability would then exist, it would be upon the ground that *after* knowledge of the danger to be anticipated and duty to use reasonable care to prevent such danger, the defendant, *acting through its agent*, failed to perform such duty. Then the defendant would, through its agent, have been present and the agent's negligence would have been the defendant's negligence. Even though the fault of the manager would then perhaps have been less, it would have been the fault of the principal, acting through the agent. It is just because here the manager abandoned his agency that the principal cannot be held liable.

We recognize that a duty imposed by law upon an employer in regard to the control of his employees or premises cannot be delegated. None the less, where that duty is only to exercise reasonable care, it must be measured by the opportunity afforded under particular conditions to prevent injury after knowledge or notice of danger is brought home to the employer. Where danger cannot reasonably be anticipated there is no duty to guard against it; after knowledge or notice of danger is present there must be reasonable opportunity to guard against the danger. Here no want of care by the defendant is shown, for at the moment when duty arose, opportunity to use care disappeared.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts. (See 268 N. Y. 664.)

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgments reversed, etc.