Filed 04/01/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 26-CV-00025

---

**Ellie Rochford et al v. Howard Center, Inc. et al**

---

## ENTRY REGARDING MOTION

Title:        Motion to Dismiss; Motion for Leave to File Sur-Reply (Motions: 2; 3)
Filer:        Edward G. Adrian; Alexander J. Larosa
Filed Date:   February 17, 2026; March 19, 2026

This case involves a dispute between neighbors. Plaintiffs complain about impacts from Defendants' syringe services program ("SSP"). Defendants have moved to dismiss (Mot. 2) and Plaintiffs have filed leave to file surreply (Mot. 3). Counsel represent all parties. For the reasons that follow, the court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss (Mot. 2) and GRANTS Plaintiffs' motion for leave to file surreply (Mot. 3).

### I.  Background

Plaintiffs reside at or own 54 and 48-50 Clarke Street in Burlington. Compl. ¶ 4. Defendants own or operate the SSP at 45 Clarke Street. *Id.* ¶¶ 6, 12. Plaintiffs describe the SSP as what "[t]he Howard Center calls its syringe distribution program" through which "Defendants . . . distribute thousands of drug-injection syringes and other drug-use related paraphernalia ("crack" pipes) each month." *Id.* ¶ 1. Since 2020, Plaintiffs have observed SSP participants, among other activities, use intravenous drugs with syringes supplied by the SSP and engage in "[b]oisterous, loud and unruly behavior" "and other disturbing antisocial behavior" "in the neighborhood, including at the properties owned by Plaintiffs." *Id.* ¶ 6. Defendants' "clientele is sometimes armed with knives," requiring intervention by police "themselves disruptive to the peace of the neighborhood" resulting in "little, if any, relief." *Id.* Because of the SSP, according to Plaintiffs, "safety, tranquility, economic value and overall quality of life have all declined . . . and Plaintiffs have all suffered damage and injury." *Id.* ¶ 9.

In one instance, SSP participants "ignored the 'no trespassing signs,' and appeared to be getting ready to use drugs" after entering Plaintiffs' yard at 54 Clarke Street. When one Plaintiff asked them to leave, another person "called her an 'entitled c***' and then struck" "with a closed fist" "her car that was parked in the driveway." *Id.* ¶ 15. SSP participants "regularly come onto the property and sit on the front porch and steps" of Plaintiffs, "[d]espite posting 'private property' and 'no trespassing' signs in front of their building at 48-50 Clarke Street." *Id.* ¶ 16. Defendants' clientele have caused tenants at that address to cancel stays, "resulting in financial loss to the Plaintiffs." *Id.* ¶ 17. "Plaintiffs have personally witnessed individuals in crisis and suffering from overdose" "using paraphernalia supplied by the SSP" "which has caused [Plaintiffs] pain, injury and trauma." *Id.* ¶ 18. Plaintiffs assert "loss of quiet enjoyment of property, diminished property values, fear for the safety of themselves, their children and families, and reputational harm to their neighborhood and community." *Id.* ¶¶ 26, 19.

Plaintiffs further allege "recurring overdoses and unsafe conditions at the SSP and in its immediate vicinity, interfering with neighbors' use and enjoyment of their own property." *Id.* ¶ 30. Plaintiffs point in part to "an increase in improperly disposed syringes," *id.* ¶ 34, and "overdoes near the SSP," *id.* ¶ 39, as "evidence" that Defendants have violated "their statutory duty under 18 V.S.A. § 4478." *Id.* ¶ 39. Plaintiffs also outline various communications with Defendants and the city and publicly available documents regarding the SSP. *Id*. ¶¶ 27-39. Plaintiffs allege this information "show[s] Defendants' knowledge of persistent nuisance conditions and their failure to bring operations into compliance with Vermont Department of Health SSP Operating Guidelines" and demonstrates how the SSP "interfer[es] with neighbors' use and enjoyment of their own property." *Id.* ¶¶ 37, 30.

Plaintiffs bring six causes of action for (1) private nuisance, (2) public nuisance, (3) negligence, (4) negligence per se/res ipsa loquitur, (5) declaratory judgment and (6) V.R.C.P. 75 administrative review. Defendants move to dismiss all claims under Rule 12(b)(6).

## II. Discussion

Under V.R.C.P. 12(b)(6), the court "must assume that the facts pleaded in the complaint are true and make all reasonable inferences in the plaintiff's favor." *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 10, 209 Vt. 514. The court does not accept as true "conclusory allegations or legal conclusions masquerading as factual conclusions." *Vitale v. Bellows Falls Union High School*, 2023 VT 15, ¶ 28, 217 Vt. 611. The court considers whether "it appears beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Davis v. American Legion, Dept. of Vermont*, 2014 VT 134, ¶ 12, 198 Vt. 204 (quotation omitted). "The purpose of a motion to dismiss is to test the law of the claim, not the facts which support it." *Powers v. Off. of Child Support*, 173 Vt. 390, 395 (2002). As a result, only "where the plaintiff does not allege a legally cognizable claim, [is] dismissal . . . appropriate." *Montague*, 2019 VT 16, ¶ 11.

"The court's attention . . . is to be directed toward determining whether the bare allegations of the complaint constitute a statement of a claim under V.R.C.P. 8(a)." *Levinsky v. Diamond*, 140 Vt. 595, 600 (1982). Rule 8 requires a "short and plain statement of the claim" in "simple, concise, and direct" language with "[a]ll pleadings [to] be construed as to do substantial justice." V.R.C.P. 8(a), (e), (f). "[T]he threshold a plaintiff must cross in order to meet our notice-pleading standard is exceedingly low." *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 (citation omitted). Consequently, "[m]otions to dismiss for failure to state a claim are disfavored and should be rarely granted." *Id*. (citation omitted). The court should be "particularly wary of dismissing novel claims because '[t]he legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations.'" *Montague*, 2019 VT 16, ¶ 11 (citation omitted).

### A. Count 1 – Private Nuisance

"'The law of private nuisance springs from the general principle that it is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary

2

damage or annoyance to his neighbor.'" *Myrick v. Peck Elec. Co.*, 2017 VT 4, ¶ 4, 204 Vt. 128, 131 (citations omitted). "[P]laintiffs claiming a nuisance have to demonstrate actual and substantial injury." *John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 10, 184 Vt. 207, 211. "To sustain such a claim, a party must show that 'an individual's interference with the use and enjoyment of another's property [is] both unreasonable and substantial.'" *Paris v. Lussier*, No. 2010-034, 2010 WL 7791942, at *4 (Vt. July 16, 2010) (unpub. mem.) (citation omitted).

"The question of whether a particular use is 'reasonable' requires the court to consider the competing interests of the parties." *Id.* "Whether a particular interference is unreasonable is a question for the factfinder . . . ." *Myrick*, 2017 VT 4, ¶ 4 (citation omitted). "'The standard for determining whether a particular type of interference is substantial is that of definite offensiveness, inconvenience or annoyance to the normal person in the community. Substantial harm is that in excess of the customary interferences a land user suffers in an organized society.'" *Paris*, 2010 WL 7791942, at *4 (citation omitted). "A claim for nuisance that cannot establish that a complained-of interference is either unreasonable or substantial must fail as a matter of law." *Myrick*, 2017 VT 4, ¶ 4. *See also Jones v. Hart*, 2021 VT 61, ¶¶ 33-36, 215 Vt. 258, 275-76 (outlining various fact-dependent considerations in determining whether challenged activity qualifies as an unlawful nuisance versus the "amount of annoyance, inconvenience and interference" that "each individual in a community must put up with") (internal quotations and citations omitted).

Private nuisances without physical intrusion or damage may prove harder for a plaintiff to demonstrate, but still qualify as permissible claims. *Jones v. Hart*, 2021 VT 61, ¶ 34, 215 Vt. 258, 276 ("[N]uisance law protects the interest in pleasure, comfort, and enjoyment in land . . . " yet "[a]s compared to other categories of invasions . . . it is generally harder to demonstrate . . . ."). Available damages in those cases would also include those like the ones sought by Plaintiffs here. *Coty v. Ramsey Assocs., Inc.*, 149 Vt. 451, 464 (1988) ("Where an abatable nuisance is found to exist, the award of damages can properly include both compensation for the lost use of property (calculated on the basis of diminished rental or use value) and compensation for personal injuries such as annoyance, discomfort, and inconvenience.")

In this case, Plaintiffs' complaint effectively alleges that Defendants' operation of the SSP results in a private nuisance from SSP participant activity on Defendants' property that somehow impacts Plaintiffs' right of quiet enjoyment of their own property.[1] *See* Section I *supra* (summarizing complaint provisions). This court has found no Vermont case law involving analogous circumstances, but the Restatement and other courts help.

Section 838 relates to Defendants' liability for a private nuisance resulting from SSP activity on Defendants' property:

> A possessor of land upon which a third person carries on an activity that causes a
> nuisance is subject to liability for the nuisance if it is otherwise actionable, and

---

[1] The court addresses in Section II.C *infra* Plaintiffs' complaint about intentional wrongdoing allegedly committed by SSP participants on Plaintiffs' properties. *E.g.*, Compl. ¶¶ 15-17 (describing alleged behavior).

> (a) the possessor knows or has reason to know that the activity is being carried on and that it is causing or will involve an unreasonable risk of causing the nuisance, and
>
> (b) he consents to the activity or fails to exercise reasonable care to prevent the nuisance.

Restatement (Second) of Torts § 838 (1979). "The phrase 'if the nuisance is otherwise actionable' means that all other elements necessary to liability under the rule stated in § 822 (requiring either (a) intentional and unreasonable conduct or (b) unintentional and otherwise actionable conduct or abnormally dangerous activity) . . . must be present in addition to the breach of duty specified in this Section." *Id.* cmt. d.

> It must . . . be shown that [defendant's] conduct in consenting to the activity or in failing to prevent it was tortious and therefore justifies subjecting him to liability for the harm. . . . [I]f the possessor has reason to believe either that the activity itself creates an undue risk of a nuisance or that the person whom he permits to act is likely to carry on the activity in such a negligent manner as to create one, he is liable for the harm caused by the activity.

*Id.* cmt. e. The illustrations demonstrate these principles, outlining how a property owner could have liability for a nuisance to neighbors arising from unsanitary conditions created by campers on the owner's property whom the owner knows will probably create such conditions, but not where the owner has no reason to believe the campers would do so. *Id.* cmt. e Illustrations 2, 3. The Restatement provides for analogous principles of liability where the landowner fails to prevent a nuisance to neighbors on his own property where he has reason to know of the nuisance arising or having arisen. *Id.* cmt. g & Illustration 5.

Other jurisdictions have applied these principles to allow claims analogous to Plaintiffs' to proceed. New York's highest court affirmed a jury verdict for a residential neighbor of a manufacturing facility whose employees regularly discarded items into plaintiffs' yard, eventually injuring them physically. *Hogle v. H.H. Franklin Mfg. Co.*, 199 N.Y. 388, 393, 395-97, 92 N.E. 794, 796-98 (1910). The court reached that result even though the factory prohibited their employees from continuing the behavior and threatened to fire them. *Id.* at 389-90. Since plaintiffs had made defendants aware of the potentially tortious employee conduct, the court concluded the jury properly decided whether defendants should have done more: "The line between protracted and habitual negligence and nuisance is not easily drawn, and facts may exist which call for damages on either theory when the pleadings are appropriate, as in this case, to either kind of relief." *Id.* at 393.

Similarly, a California court of appeals upheld a city's determination that a restaurant created a public nuisance[2] under city ordinance, given the way the owners operated it and what the owners knew about its operations. In *Benetatos v Los Angeles*, 235 Cal. App. 4th 1270, 1284–85, 186 Cal. Rptr. 3d 46, 59 (2015), the court rejected the restaurant's assertions that the neighborhood, not the restaurant, created the nuisance. The evidence showed the owners'

---

[2] The court addresses Plaintiffs' public nuisance claim below. It discusses *Benatastos* and *North Dakota* for their analogous persuasiveness under § 838 to Plaintiffs' private nuisance cause of action.

awareness and inaction regarding trash, graffiti and criminal activity at the restaurant and endured by the surrounding community, in contrast to other neighborhood restaurants with no such problems. *Id.*

In another public nuisance case, the District of North Dakota denied dismissal of a state's claim against the federal government. In *North Dakota v. United States*, 480 F. Supp. 3d, 917, 934-35 (D.N.D. 2020), the court found § 838 consistent with North Dakota law, allowing the state's claim for public nuisance and negligence, among others, to proceed in a case where the state claimed damages for sustained state law enforcement response to 5,000-8,000 protestors it alleged the federal government had allowed to camp on federal property. *Id. See also Bellflower v. Pennise*, 548 F.2d 776, 778 (8th Cir. 1977) (requiring proximate cause, consistent with § 838's "if the nuisance is otherwise actionable").

In this case, the court concludes Plaintiffs' private nuisance claim survives dismissal. Defendants' allegedly unreasonable and substantial interference with Plaintiffs' rights of quiet enjoyment presents a question of fact beyond the scope of Rule 12(b)(6). *Myrick*, 2017 VT 4, ¶ 4; Section II *supra* (citing dismissal standard). Plaintiffs' complaint outlines numerous sources of information putting Defendants on notice of the activities constituting the alleged nuisance, sufficient to survive dismissal. Compl. ¶¶ 27-39. The court concludes that Plaintiffs' allegations suffice as a matter of law to satisfy Restatement (Second) of Torts § 838 and the cases noted above. Plaintiffs' Count 1 survives dismissal.

### B. Count 2 – Public Nuisance

> [T]he concept of public nuisance is vague and amorphous[.] [T]o be considered a public nuisance, an activity must disrupt the comfort and convenience of the general public by affecting some general interest. A plaintiff must do more than note a generalized public interest but rather must explain how the nuisance affects or has the potential to affect the general public. In addition, to maintain a claim for public nuisance, a plaintiff must show special damage from the public nuisance and it must appear that the injury is distinct from that suffered by the general public. Special damage must be different in kind and not merely in degree[.]

*Addison Cent. Sch. Dist. v. Monsanto Co.*, No. 2:23-CV-00164, 2024 WL 4348194, at *8 (D. Vt. Sep. 30, 2024) (internal quotations and citations omitted) (alterations in original). *See also* Restatement (Third) of Torts: Liab. For Econ. Harm § 1, cmt. d(3) (2020) ("Plaintiffs generally cannot recover for economic losses . . . from harm caused to the person or property of others" except for "a public nuisance [where] recovery may be allowed to a plaintiff who can show an economic injury different in kind from the injuries suffered in common by the affected community."); *id.* § 7 (noting that unless excepted "a claimant cannot recover for economic loss caused by: (a) unintentional injury to another person; or (b) unintentional injury to property in which the claimant has no proprietary interest"); *id.* § 7 cmt. a ("[T]here is no general duty in the background to avoid the negligent infliction of economic loss on another."); *id.* § 8 cmt. b ("When a public nuisance is thus established, a private plaintiff generally can sue only to redress a distinctive or 'special' injury distinct in kind from the harm suffered by all members of the affected community.").

5

Special damage sufficient to survive a motion to dismiss may include uniquely borne remediation costs for alleged environmental contamination, *Addison Cent. Sch. Dist.*, 2024 WL 4348194, at \*9, or total obstruction to private property access through a blocked public way where others have alternative routes, *Pilgrim Plywood Corp. v. Melendy*, 110 Vt. 12, 17-18 (1938).

> What injuries are "special," or "distinct in kind," is unavoidably a matter of judgment rather than rule. Courts have reduced some of those judgments to the patterns explained in Comments *d* and *e*. In cases arising outside those patterns, decisions about recovery are best made by asking if liability would cause the problems that the requirement of special injury is meant to address: whether permitting the plaintiff's claim would multiply the amount of litigation or the defendant's liabilities unduly, and whether plaintiffs who are allowed to sue can be separated in a principled fashion from those who are not.

Restatement (Third) of Torts: Liab. for Econ. Harm § 8 cmt. c (2020). The illustrations indicate the variability anticipated by the Restatement and the dispositive significance of a court finding of the distinctiveness of a plaintiff's injuries. *Id.* § 8 cmt. e, Illus. 3, 4.

Given the pending motion, this court focuses on the allegations of Plaintiffs' injuries. *See* Section II *supra* (summarizing Rule 12(b)(6) standard). Their allegations specify no harm distinctive to Plaintiffs. They allege both "threat[s to] the rights of the community at large" and "Plaintiffs['] . . . special damages different in kind from those of the public at large, to wit, fear for their safety and wellbeing, loss of the quiet enjoyment of their property, increased safety risks, and reduction in property values." Compl. ¶ 45. The court does not accept these conclusory allegations as true. *Vitale*, 2023 VT 15, ¶ 28.

Even if it did, the court cannot envision any injuries to Plaintiffs "different in kind and not merely in degree" compared to their community. *Addison Cent. Sch. Dist.*, 2024 WL 4348194, at \*8. Plaintiffs' alleged loss of quiet enjoyment, reduction in property values, fear for their safety and their pain or trauma from witnessing SSP participants' drug use, Compl. ¶¶ 18, 19, all seem to this court to represent the categorical sorts of harm any of Defendants' neighbors might likewise experience. These alleged harms of Plaintiffs appear just to vary in degree, not kind, from their neighbors.

This court remains "particularly wary of dismissing novel claims because '[t]he legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations.'" *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 11, 209 Vt. 514, 520 (citation omitted). Yet, "where the plaintiff does not allege a legally cognizable claim, dismissal is appropriate." *Id.* Reading their pleadings liberally and drawing every reasonable inference in Plaintiffs' favor, this court concludes Plaintiffs' public nuisance claim falls into the latter category, not the former. The court dismisses Plaintiffs' Count 2 as they have failed to state a claim under Rule 12(b)(6).

### C. Count 3 – Negligence

"Common-law negligence has four elements: a legal duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a causal link between the breach and the injury." *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 26, 212 Vt. 612 (citation omitted). "In determining whether a duty exists, we consider 'a variety of public policy considerations and relevant factors. It is a question of fairness that depends on, among other factors, the relationship of the parties, the nature of the risk, the public interest at stake, and the foreseeability of the harm.'" *Id.* (citations omitted). "Underlying 'these considerations is the basic tort rule that duty is measured by undertaking.'" *Id.* (citation omitted).

Plaintiffs' allegations of intentional wrongdoing by SSP participants on Plaintiffs' and others' properties sound in negligence. *See* Section I *supra* (summarizing complaint); Restatement (Second) of Torts § 302B & cmt's. e, f (1965) (outlining principles).

However, "the economic-loss rule prohibits recovery in tort for purely economic losses." *Sutton*, 2019 VT 71A, ¶ 30. Economic losses include emotional harms like the ones alleged by Plaintiffs in this case. *E.g.*, Compl. ¶ 15 (describing "intruder[]" who "struck [Plaintiff's] car with a closed fist" but not alleging any property damage); *id.* ¶ 16 (describing Defendants' clientele sitting on "porch and steps impeding access to the regular tenants" but alleging no physical or property damage); *id.* ¶ 18 (alleging "pain, injury and trauma" without accompanying physical injury). "[N]egligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying <u>physical</u> harm, which does not include economic loss." *Veljovic v. TD Bank, N.A.*, 2025 VT 38, ¶ 10 (internal quotation and citation omitted) (emphasis added); *see also Zeno-Ethridge v. Comcast Corp.*, 2024 VT 16, ¶ 36, 219 Vt. 121 (holding that "an action for the recovery of damages based on mental or emotional harms like PTSD lies in NIED [negligent infliction of emotional distress], not negligence").

Exceptions to the economic loss rule exist, if they satisfy the underlying rationale of the rule as articulated in either the Restatement (Second) of Torts § 552 (1977) or Restatement (Third) of Torts, Liab. For Econ. Harm § 1 cmt's.. c, d, § 6. *Sutton*, 2019 VT 71A, ¶¶ 31 & n. 7, 32. *Cf.* Restatement (Third) of Torts: Phys. & Emot. Harm § 39 (2012) ("When an actor's prior conduct, even though not tortious, creates a continuing risk of <u>physical</u> harm of a type characteristic of the conduct, the actor has a duty to exercise reasonable care to prevent or minimize the harm.") (emphasis added).

Plaintiffs have alleged only economic losses. Compl. ¶¶ 15, 16, 18, 19, 26, 49. Plaintiffs do not assert any exception to Vermont's economic loss rule. They have not alleged any special relationship with Defendants that would give rise to the limited recognized exceptions. *See Long Trail House Condo Ass'n. v. Engelberth Constr., Inc.*, 2012 VT 80, ¶¶ 10, 13-29, 192 Vt. 322 (summarizing cases, limited exception and policy rationale).

The court finds nothing in Plaintiffs' complaint that suggests that any exception should apply, based on the policy considerations used by the Vermont Supreme Court. *See Sutton*, 2019 VT 71A ¶¶ 31 & n. 7, 32 (referencing Restatement); *Long Trail House Condo Ass'n.*, 2012 VT

80, ¶¶ 10, 13-29 (summarizing cases and policy rationale); Restatement (Third) of Torts:  Liab. for Econ. Harm § 1 ("An actor has no general duty to avoid the unintentional infliction of economic loss on another") (*cited with approval by Sutton*, 2019 VT 71A, ¶ 31 n. 7); Restatement (Third) of Torts § 1, cmt. b (underscoring no "presumption against the existence of a duty" "just . . . that duties to avoid causing economic loss require justification on more particular grounds than do duties to avoid causing physical harm"); *id.* cmt.'s.. c, d (outlining further policy considerations).

This court concludes that the economic loss rule bars Plaintiffs' Count 3.  *Sutton*, 2019 VT 71A, ¶ 30.  It requires dismissal for failure to state a claim under Rule 12(b)(6).

### D.  Count 4 – Negligence Per Se/Res Ipsa Loquitur

"Res ipsa loquitur (literally, 'the thing speaks for itself') is not a magic doctrine that shifts the burden to the defendant. It simply refers to a form of circumstantial evidence. Thus, res ipsa loquitur allows . . . the jury a permissive inference of negligence."  *Cyr v. Green Mountain Power Corp.,* 145 Vt. 231, 235, 485 A.2d 1265, 1268 (1984).  *See also id.* at 235-36 (summarizing four elements of res ipsa loquitur).

Count 4 fails to state a cognizable cause of action.  It seeks a potentially applicable evidentiary technique for Plaintiffs' now dismissed negligence claim in Count 3.  The court dismisses Count 4 for failure to state a claim under Rule 12(b)(6).

### E.  Count 5 – Declaratory Judgment

Plaintiffs seek a declaration under 12 V.S.A. § 4711 *et seq.* that (1) Defendants' operation of SSP violates 18 V.S.A. § 4478, (2) Defendants' operation of SSP constitutes a nuisance and (3) Defendants must abate the nuisance by stopping the SSP.  Compl. ¶¶ 56, 58.

Declaratory relief requires a justiciable controversy with the threat of actual injury to a protected legal interest.  *Chase v. State*, 2008 VT 107, ¶ 13, 184 Vt. 430, 438.  The court should not dismiss a declaratory judgment proceeding solely because another remedy exists.  *Neal v. Brockway*, 136 Vt. 119, 121-22 (1978) (citations omitted).  "A court faced with a request for declaratory relief must look at the litigation situation as a whole in determining whether it is appropriate to entertain the request for such relief."  *Echeverria v. Town of Tunbridge*, 2024 VT 47, ¶ 18, 219 Vt. 585, 593 (internal quotation and citation omitted).

Plaintiffs have not identified and the court cannot locate any authority providing them a protectible legal interest under 18 V.S.A. § 4478 necessary for them to establish justiciability for their first request for declaratory relief.  *See Osier v. Burlington Telecom*, 2016 VT 34, ¶ 41, 201 Vt. 483, 501 (denying declaratory relief where "there is nothing in the statute creating a right of action" for plaintiffs).

Nor does § 4478 contain any indication that the legislature intended it to create a citizen right of action.  *See Rowe v. Brown*, 157 Vt. 373, 375-76 (1991) ("The statute protects the public interest, and its violation offends the public weal" so a "citizen could seek a declaration that the

8

town was in violation of the statute . . . .") For instance, § 4478 contains none of the language of the Open Meeting Law that supported the Vermont Supreme Court's conclusion that it created a citizen right of action. *Compare id.* ("'All meetings of a public body are declared to be open to the public at all times . . . .")_ *with* 18 V.S.A. § 4478 ("The Department of Health, in consultation with community stakeholders, shall develop operating guidelines for needle exchange programs" and compliant programs "shall be approved by the Commissioner of Health.").

Plaintiffs do not suggest otherwise. Opp. at 20-21, Surrep. at 12-13 (omitting any assertion that § 4478 creates a private right of action). The plain, ordinary meaning of this statutory language shows no ambiguity or uncertainty. *See Shires Housing, Inc. v. Brown*, 2017 VT 60, ¶¶ 9, 15, 205 Vt. 186, 191-92, 194 (outlining legal standards for statutory construction).

Without a protectible legal interest under § 4478, Plaintiffs lack justiciability for their declaratory judgment request (1). The court dismisses it for lack of subject matter jurisdiction under Rule 12(b)(1). *See* V.R.C.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

Regarding requests (2) and (3) of Plaintiffs' prayer for declaratory judgment, the court has already concluded that their Count 1 claim for private nuisance survives dismissal. Components (2) and (3) of Count 5 survive for the same reason, for now.[3]

## F. Count 6 -- V.R.C.P. 75 Administrative Review

Rule 75 provides for limited review of "[a]ny action or failure or refusal to act by an agency of the state or political subdivision thereof, including any department, board, commission, or officer." V.R.C.P. 75(a). Plaintiffs have named no such party in this case. They do not allege that Defendants qualify. They provide no authority for their assertion that Defendants' action pursuant to a potential municipal permit or administrative approval gives this court Rule 75 jurisdiction. *See* Compl. ¶ 60 (seeking Rule 75 relief "[t]o the extent the Howard Center acted pursuant to municipal permitting or administrative approvals"). Nor has the court found any such authority.

The court dismisses Plaintiffs' Count 6 for failure to state a claim under Rule 12(b)(6).

## G. Statute of Limitations

The court defers ruling on Defendants' statute-of-limitations assertions pending factual development. *E.g.*, *Kauffman v. State Farm Mut. Auto. Ins. Co.*, 857 F. Supp. 23, 25 (D. Vt. 1994) ("Generally, the determination of when a plaintiff actually discovered or reasonably should have discovered the injury is a factual question usually reserved for the jury.").

The court notes that the Vermont Supreme Court has apparently never adopted the continuing tort doctrine. *Nesti v. Vt. Agency of Transp.*, 2023 VT 1, ¶¶ 37-38, 217 Vt. 423, 439

---

[3] The court acknowledges a jury verdict or summary judgment on Count 1 would likely moot both requests (2) and (3). The former would determine both liability and remedy and the latter could determine at least liability.

("This Court has never applied the doctrine, but we have 'indicated a variation of it may exist for discrimination cases,' following the federal courts.") (citations omitted); *Gettis v. Green Mountain Econ. Dev. Corp.*, 2005 VT 117, ¶ 24, 179 Vt. 117, 125 ("We have never adopted the continuing tort doctrine, although we indicated a variation of it may exist for discrimination cases . . ."); *State v. Atl. Richfield Co.*, 2016 VT 61, ¶ 61 n.6, 202 Vt. 212, 222 ("Nor do we address the argument raised below but not subject to this appeal that the continuing tort doctrine saves at least some of the State's claims from the six-year limitation."). *But see* Opp. at 6-7, Surrep. at 2-3 (asserting continuing tort doctrine).

Discovery will also help assess the appropriate timeframe for any damages alleged by Plaintiffs. *See Wheeler v. St. Johnsbury*, 87 Vt. 46, 51 (1913) ("[T]he demurrer . . . is good only for what lies back of the statutory period . . ."). Defendants may raise their challenges again at the appropriate time.

### H. Plaintiffs' Motion for Leave to File Surreply

"The court may also allow a surreply memorandum if the memorandum would assist in clarifying the issues, particularly where the party seeking to file the memorandum is addressing newly raised factual or legal arguments by the opposing party." V.R.C.P. 7(b)(4).

Plaintiffs' surreply does not meet that standard. Defendants' reply raised no new factual or legal arguments. The surreply's 28 pages (14 pages single spaced) exceed the 25 pages of the initial opposition. They did not "assist in clarifying the issues." V.R.C.P. 7(b)(4).

The court studied and cited the surreply. It GRANTS Plaintiffs' motion to include the surreply as part of the case record.

### III. Order

For the reasons set forth above, the court:

A. GRANTS Defendants' motion to dismiss (Mot. 2) Count 2, Count 3, Count 4, Count 5 as embodied in Compl, ¶58(a) and Count 6;
B. DENIES Defendants' motion to dismiss (Mot. 2) Count 1 and Count 5 as embodied in Compl. ¶ 58(b), (c); and
C. GRANTS Plaintiffs' motion for leave to file surreply (Mot. 3).

Electronically signed pursuant to V.R.E.F. 9(d) on March 31, 2026.

Colin Owyang
Superior Court Judge

10