NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 4

Nos. 2016-167 & 2016-169

| | |
|---|---|
| Nancy Myrick | Supreme Court |
| v. | On Appeal from<br>Superior Court, Addison Unit, |
| Peck Electric Company, d/b/a Peck Solar,<br>Encore Middlebury Solar I, LLC and<br>Encore Redevelopment, LLC | Civil Division<br><br>October Term, 2016 |
| Dale Hastings and Jess Whitney | |
| v. | |
| Solarcommunities, Inc., d/b/a Suncommon,<br>Sun CSA 6, LLC and Helios Solar, LLC | |

Helen M. Toor, J.

Peter F. Langrock and Wanda Otero-Weaver of Langrock Sperry & Wool, LLP, Middlebury, for
  Plaintiffs-Appellants.

Ritchie E. Berger and Justin B. Barnard of Dinse, Knapp & McAndrew, P.C., Burlington, for
  Defendants-Appellees.

Joslyn S. Wilschek of Primmer Piper Eggleston Cramer, PC, Montpelier, and Kathryn E. Taylor,
  Burlington, for Amicus Curiae Lake Champlain Regional Chamber of Commerce.


PRESENT:  Reiber, C.J., Dooley, Skoglund and Eaton, JJ., and Bent, Supr. J.,
          Specially Assigned


¶ 1.    **EATON, J.**   For 120 years, Vermont has recognized that the unsightliness of a thing, without more, does not render it a nuisance under the law.  See Woodstock Burying Ground Ass'n v. Hager, 68 Vt. 488, 35 A. 431 (1896).  These consolidated cases require us to revisit whether Vermont law recognizes a cause of action for private nuisance based solely on aesthetic

considerations. Appellants, a group of landowners from New Haven, appeal from the trial court's grant of summary judgment to defendants, two solar energy companies. The landowners filed suit after their neighbors leased property to the solar companies for the purpose of constructing commercial solar arrays. According to the landowners, the solar arrays constitute a private nuisance because they have negatively affected the surrounding area's rural aesthetic, causing properties in their vicinity to lose value. The trial court consolidated the cases and, noting that this Court's precedent in Hager bars nuisance actions based purely on aesthetics, granted summary judgment to the solar companies. We uphold Vermont's long-standing rule barring private nuisance actions based upon aesthetic disapproval alone. Accordingly, we affirm.

¶ 2. We review a trial court's decision to grant summary judgment under a de novo standard of review. Deveneau v. Wielt, 2016 VT 21, ¶ 7, __ Vt. __, 144 A.3d 324. Summary judgment is appropriate when there are no disputed material facts and the moving party is entitled to judgment as a matter of law. Id. There are no disputed material facts here. The sole question on appeal is whether Vermont law recognizes a private nuisance cause of action for alleged interference with property resting solely upon aesthetic considerations. Landowners argue the superior court erred in granting summary judgment for two reasons.

¶ 3. Landowners' primary argument is that "[t]he ordinary comfort of human existence, as conceived in today's society, requires application of well-established nuisance law to claims based on aesthetics." According to landowners, Vermont's existing private nuisance law is broad enough to apply to aesthetic harm, and landowners argue that our only precedent to address this question, Hager, is "no longer good law" because it was decided in 1896 and society has since come to recognize "the importance of scenic resources in today's economy." Citing Coty v. Ramsey Assocs., Inc., landowners argue that this Court "foreshadowed the application of private nuisance law to claims based solely on aesthetics" and invite us to join what we described in 1988 as "a trend" in other states towards acknowledging such aesthetic nuisance claims. 149 Vt. 451,

2

458, 546 A.2d 196, 202 (1988). Additionally, landowners argue that aesthetic "injury to the sensibilities and ordinary comfort" of the average person is cognizable as nuisance and compensable by reference to diminution in property value. We address each argument in turn.

¶ 4. "The law of private nuisance springs from the general principle that it is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor." Pestey v. Cushman, 788 A.2d 496, 502 (Conn. 2002) (quotation omitted). In Vermont, a private nuisance is defined as an "interference with the use and enjoyment of another's property" that is both "unreasonable and substantial." Coty, 149 Vt. at 457, 546 A.2d at 201. Whether a particular interference is unreasonable is a question for the factfinder, see Post & Beam Equities Grp., LLC v. Sunne Vill. Dev. Prop. Owners Ass'n, 2015 VT 60, ¶ 24, 199 Vt. 313, 124 A.3d 454, and "[t]he standard for determining whether a particular type of interference is substantial is that of 'definite offensiveness, inconvenience or annoyance to the normal person in the community.' " Coty, 149 Vt. at 457, 546 A.2d at 201 (quoting W. Prosser, Law of Torts § 87, at 578 (4th ed. 1971)). A claim for nuisance that cannot establish that a complained-of interference is either unreasonable or substantial must fail as a matter of law. Compare Post & Beam, 2015 VT 60, ¶ 25 (affirming trial court's finding that blockade was private nuisance where blockade caused difficulties for vehicles and generated complaints by patrons because trial court did not err in finding "the gravity of the harm outweigh[ed] the utility of the actor's conduct") (quoting Restatement (Second) of Torts § 826(a) (1979)), with Lopardo v. Fleming Cos., Inc., 97 F.3d 921, 929-30 (7th Cir. 1996) (affirming trial court's grant of summary judgment for plaintiff on question of private nuisance where court found defendant neighbor's use of land was unreasonable as matter of law).

¶ 5. An unattractive sight—without more—is not a substantial interference as a matter of law because the mere appearance of the property of another does not affect a citizen's ability to use and enjoy his or her neighboring land. See, e.g., Oliver v. AT&T Wireless Servs., 76 Cal.

App. 4th 521, 534 (Cal. Ct. App. 1999) (holding that cell transmission tower was not nuisance because "the essence of a private nuisance is its interference with the use and enjoyment of land" and unpleasant appearance alone does not interfere); Oklejas v. Williams, 302 S.E.2d 110, 111 (Ga. Ct. App. 1983) (holding that unsightly wall was not nuisance, even if it tended to devalue adjoining property, because wall did not interfere); McCaw v. Harrison, 259 S.W.2d 457, 458 (Ky. 1953) (holding that cemetery was not nuisance "merely because it is a constant reminder of death and has a depressing influence on the minds of persons who observe it"); Bansbach v. Harbin, 728 S.E.2d 533, 538 (W. Va. 2012) (describing private nuisance as requiring significant or material reduction in homeowner's enjoyment of property and noting that not every interference with enjoyment of land is actionable). A substantial interference requires some showing that a plaintiff has suffered harm to "the actual present use of land" or to "interests in having the present use of the land unimpaired by changes in its physical condition." Restatement (Second) Torts § 821D cmt. b (emphasis added). A landowner's interest "in freedom from annoyance and discomfort in the use of land is to be distinguished from the interest in freedom from emotional distress. The latter is purely an interest of personality and receives limited legal protection," since emotional distress is not an interference with the use or enjoyment of land. Id. For example, there is a difference between, on the one hand, a complaint that solar panels are casting reflections and thereby interfering with a neighbor's ability to sleep or watch television and, on the other hand, the landowners' complaint in this case—that the solar panels are unattractive. The former involves a potential interference with the use or enjoyment of property, while the latter involves emotional distress.

¶ 6.   Additionally, a complaint based solely on aesthetic disapproval cannot be measured using the unreasonableness standard that underpins nuisance law. This is because unlike traditional bases for nuisance claims—noise, light, vibration, odor—which can be quantified, the propriety of one neighbor's aesthetic preferences cannot be quantified because those preferences

4

are inherently subjective. Cf. Naegele Outdoor Ad. Co. of Minn.. v. Vill. of Minnetonka, 162 N.W.2d 206, 212 (Minn. 1968) (observing "primary objection" to aesthetic-based regulation is "its subjective nature, for what may be attractive to one man may be an abomination to another"). The appellants find the solar panels unsightly, but other equally reasonable people may find them attractive. And while the landowners may be frustrated by the appearance of solar arrays adjacent to their property, "they surely can see the converse mischief (and infringement) on a homeowner's property rights if homeowners could prevent their neighbors from construction deemed unattractive." Oliver, 76 Cal. App. 4th at 536; see also Rankin v. FPL Energy, LLC, 266 S.W.3d 506, 512 (Tex. App. 2008) (observing that recognizing aesthetic nuisance would give neighbors "in effect, the right to zone the surrounding property").

¶ 7. Likewise, recognizing aesthetic nuisance would transform nuisance law "into a license to the courts to set neighborhood aesthetic standards." Oliver, 76 Cal. App. 4th at 525. "In our populous society, the courts cannot be available to enjoin an activity solely because it causes some aesthetic discomfort or annoyance. Given our myriad and disparate tastes, life styles, mores, and attitudes, the availability of a judicial remedy for such complaints would cause inexorable confusion." Green v. Castle Concrete Co., 509 P.2d 588, 591 (Colo. 1973) (en banc). The judicial branch is ill-suited to be an arbiter of style or taste, and given the subjectivity of aesthetic preferences, they must remain the province of legislative decision-making in the form of zoning laws and, in specific instances, restrictive covenants that the courts are competent to interpret and apply. See Wernke v. Halas, 600 N.E.2d 117, 122 (Ind. Ct. App. 1992); cf. In re Cross Pollination, 2012 VT 29, ¶ 10, 191 Vt. 631, 47 A.3d 1285 (mem.) (describing standard for compliance under Vermont's land use and development law as including inquiry into any adverse impact on scenic and natural beauty).

5

¶ 8.    This understanding of nuisance law—as requiring more than aesthetic disapproval—has been settled law in Vermont since this Court's laconic 1896 decision in <u>Hager</u>, when we held that

> [t]he law will not declare a thing a nuisance because it is unsightly and disfigured, nor because it is not in a proper and suitable condition, nor because it is unpleasant to the eye, and a violation of the rules of propriety and good taste, nor because the property of another is rendered less valuable.

68 Vt. at 489, 35 A. at 431-32.  Nevertheless, landowners urge us to overrule <u>Hager</u> or to declare that it is no longer good law.  "As we address our long-standing precedents, we are 'not a slavish adherent to the principle of stare decisis, but we will not deviate from policies essential to certainty, stability, and predictability in the law absent plain justification supported by our community's ever-evolving circumstances and experiences.' " <u>Demag v. Better Power Equip., Inc.</u>, 2014 VT 78, ¶ 14, 197 Vt. 176, 102 A.3d 1101 (quoting <u>State v. Carrolton</u>, 2011 VT 131, ¶ 15, 191 Vt. 68, 39 A.3d 705).  We do not accept the landowners' argument that "[g]iven the importance of scenic resources in today's economy, and the development of our jurisprudence, <u>Hager</u> is no longer good law."  This Court has not backed away from the rule we announced in 1896, and since that time the Legislature has not acted to create a remedy for purely aesthetic concerns.  We reiterate that we do not lightly overturn our precedent.  See <u>Chittenden v. Waterbury Ctr. Comm. Church, Inc.</u>, 168 Vt. 478, 490-91, 726 A.2d 20, 29 (1998) (declining to overturn Court's precedent that "has existed, without legislative change, for almost two centuries").

¶ 9.    Additionally, notwithstanding our suggestion in <u>Coty</u> in 1988 that there was "[s]ome evidence of a trend" in other jurisdictions towards recognizing aesthetics as a part of nuisance law, that nascent trend has failed to materialize and the majority of jurisdictions to address the question of whether to recognize aesthetic nuisance have declined to do so.[*]  149 Vt. at 458,

---

[*]    States that have addressed whether to recognize aesthetic nuisance have, broadly speaking, taken one of three approaches: bar aesthetic nuisance suits; recognize aesthetic nuisance

6

546 A.2d at 201. Our decision today reaffirms that Vermont's rule barring nuisance claims based solely on aesthetics is aligned with the majority rule in this country. See, e.g., Wernke, 600 N.E.2d at 121-22 (collecting cases and noting that "[i]t is well-settled throughout this country that, standing alone, unsightliness, or lack of aesthetic virtue, does not constitute a private nuisance"). We believe the majority rule to be sound.

¶ 10.    Landowners' second argument is that they should be entitled to recover because the solar panels have allegedly caused their property value to fall. At the outset, landowners conceded at oral argument that they were not pursuing a claim that diminution in value in itself was sufficient to constitute a nuisance, but rather that the diminution in value should be considered only as a measure of damages for a nuisance otherwise proven. A concession at oral argument is binding, and the Court will treat a conceded argument as having been waived. See Ward v. LaRue, 2016 VT 81, ¶ 15, __ Vt. __, __ A.3d __; Orr v. Orr, 122 Vt. 470, 472, 177 A.2d 233, 235 (1962). Nevertheless, we briefly address the issue of diminution in property value alone as constituting

---

only when the complained-of harm includes an element of traditional nuisance, such as noise, odor, light disruption from windmills, or a physical invasion; or recognize aesthetic nuisance. The majority of states to answer the question have declined to recognize aesthetic nuisance at all. See, e.g., Yaffe v. City of Ft. Smith, 10 S.W.2d 886, 889 (Ark. 1928); Flood v. Consumers Co., 105 Ill. App. 559 (Ill. 1903); Wernke, 600 N.E.2d at 121-22; Livingston v. Davis, 50 N.W.2d 592, 598 (Iowa 1951); Charlton v. Town of Oxford, 2001 ME 104, ¶ 33, 774 A.2d 366, 376; Stoneburner v. O'-Gas-Co. Sales Corp., 237 N.Y.S. 339, 341-42 (N.Y. Sup. Ct. 1929); Mathewson v. Primeau, 395 P.2d 183, 189 (Wash. 1964). A handful of states have taken the approach of recognizing aesthetic nuisance only when the alleged aesthetic interference is accompanied by traditional elements of nuisance. See, e.g., Leaf River Forest Prods., Inc. v. Ferguson, 662 So. 2d 648 (Miss. 1995); Burch v. Nedpower Mount Storm, LLC, 647 S.E.2d 879, 891-92 (W. Va. 2008). An even smaller number of states recognize aesthetic nuisance, and most of those states do so only in areas that are zoned for residential use. See, e.g., Hay v. Stevens, 530 P.2d 37, 39 (Or. 1975). Moreover, actions taken out of spite are different from traditional nuisance analysis. As we observed in Coty, "the great majority of jurisdictions have held that where a defendant has acted solely out of malice or spite, such conduct is indefensible on social utility grounds, and nuisance liability attaches." 149 Vt. at 458, 546 A.2d at 196 (citing Prosser, supra, § 89, at 598-99). Here, however, the landowners have not argued that the solar panels at issue were constructed out of spite or malice, and as such we need not address the role of aesthetics in the context of a spite case.

7

nuisance to clarify the scope of private nuisance in Vermont in light of our decisions in Hager and Allen v. Uni-First Corp., 151 Vt. 229, 558 A.2d 961 (1988).

¶ 11. In Uni-First, a group of homeowners in Williamstown sought damages after state inspectors discovered that a chemical solvent from a drycleaner had entered the town's drinking water and fear of contamination caused a decline in property values. 151 Vt. at 230, 558 A.2d at 962. On appeal, this Court held that homeowners could sustain a private nuisance cause of action based on "a public perception of widespread contamination" that resulted in diminished property values. Id. at 233-34, 558 A.2d at 963-64. Specifically, we concluded that even though not all the plaintiffs whose property value fell could prove that their property was contaminated, there was sufficient evidence of generalized contamination that was causally linked to lowered property values. Id. at 234, 558 A.2d at 964.

¶ 12. Landowners urge us to interpret Uni-First as permitting recovery in nuisance "based on diminished property values caused by an adverse public perception, regardless of [the] accuracy" of that perception. That reading of Uni-First, however, is too broad. Uni-First represents a narrow category of private nuisance claims involving chemical contamination that threatens to or in fact causes an unreasonable interference. See, e.g., Lewis v. Gen. Elec. Co., 254 F. Supp. 2d 205, 218 (D. Mass. 2003) (collecting cases and observing that "[a]lthough decisions have gone in various directions regarding common law nuisance claims for diminution in property value caused by nearby contamination, the stronger strand of jurisprudence favors recognizing such claims"). In Uni-First, the harm was not diminished property value but the "actual and substantial" threat of contamination, and the proper measure for damages was the diminution in value. 151 Vt. at 233-34, 558 A.2d at 963-64; see also John Larkin, Inc. v. Marceau, 2008 VT 61, ¶ 10, 184 Vt. 207, 959 A.2d 551. In other words, a decrease in property value does not mean there has been an interference with that property's use, a requisite for a nuisance claim. See Oliver, 76 Cal. App. 4th at 534.

¶ 13. Additionally, a claim of nuisance based solely upon diminution in property value invites speculation, as "[p]roperty values are affected by many factors; a decrease in market value does not mean there is a nuisance, any more than an increase means there is not." Schneider Nat. Carriers, Inc. v. Bates, 147 S.W.3d 264, 277 (Tex. 2004); see also Adkins v. Thomas Solvent Co., 487 N.W.2d 715, 724 (Mich. 1992); Burch v. Nedpower Mount Storm LLC, 647 S.E.2d 879, 892 (W.Va. 2007). And such a rule of law would be one-sided: a plaintiff alleging diminished property value because of activities on a neighbor's land—such as construction of an oddly-shaped house—would have a claim for damages, but a neighbor whose activities resulted in an increase in the property owner's value—such as construction of a palatial estate—would have no claim for contribution for the activity that increased property value. As with aesthetic concerns, allowing a cause of action in nuisance any time an activity on a neighbor's land has a negative impact on another's property value would likely lead to neighborly discord in the form of claims for damages by neighbors alleging neighboring activities have made their property less valuable.

¶ 14. For the foregoing reasons, we reaffirm the rule from Hager that private nuisance law in Vermont does not encompass a cause of action for aesthetic harm alone, and the trial court therefore did not err as a matter of law when it granted the solar companies' motions for summary judgment.

Affirmed.

FOR THE COURT:

_____
Associate Justice