Vermont Superior Court
Filed 05/30/25
Orange Unit

VERMONT SUPERIOR COURT
Orange Unit
5 Court Street
Chelsea VT 05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-03169

---

**The Howard Mitchell III Living Trust, Morgan Klarich, Trustee v. Ariadne Terrell**

## ENTRY REGARDING MOTION

Title:       Motion for Summary Judgment  (Motion: 15)
Filer:       Scott P. McGee, Esq.
Filed Date:    March 17, 2025

The motion is GRANTED IN PART.

This case is about a rogue gate on a private road, an unsafe power line, and neighborly relations gone sour. Plaintiff Morgan Klarich, as Trustee of the Howard Mitchell III Living Trust, has petitioned the court for injunctive relief and damages against Defendant Ariadne Terrell. Plaintiff claims that Defendant has trespassed on her property, prevented Plaintiff's full access to and enjoyment of her property, created a nuisance, and caused her emotional distress.

The record in this case shows Defendant's evident intent not to participate in the court proceedings. Initially represented by counsel in the fall of 2021, Defendant soon ceased any communication with her counsel, who consequently moved to withdraw from representing Defendant in the summer of 2022. After unsuccessful attempts to serve Defendant with documents related to the proceeding, the court issued a tack order on September 29, 2022. Still, Defendant failed to appear at a hearing on October 18, 2022, and the court granted the withdrawal of Defendant's counsel and Plaintiff's motion to compel discovery. Defendant failed to provide any responses to Plaintiff's discovery requests and has remained consistent in refusing to engage in the proceedings in any manner ever since.

Plaintiff first moved for a summary judgment in June 2023, but that motion was denied in January 2024. After several continuances requested by Plaintiff, she filed the current Motion for Summary Judgment on March 17, 2025.

The Court has reviewed the filings, and for reasons stated below, it grants the Motion as to Defendant's liability and injunctive relief, but it cannot grant the motion on the issue of monetary damages for which Plaintiff will need an evidentiary hearing.

## Standard for Summary Judgment

In order to succeed on a motion for summary judgment, the moving party must satisfy a stringent two-part test: first, no genuine issue of material fact must exist between the parties, and second, there must be a valid legal theory that entitles the moving party to judgment as a matter of law.

*Price v. Leland*, 149 Vt. 518, 521 (1988) (citing V.R.C.P. 56(c); *Gore v. Green Mountain Lakes, Inc.*, 140 Vt. 262 (1981)). "An issue of fact 'is material only if it might affect the outcome.'" *In re Est. of Fitzsimmons*, 2013 VT 95, ¶ 13, 195 Vt. 94 (citing *N. Sec. Ins. Co. v. Rossitto*, 171 Vt. 580 (2000) (mem.)). "The moving party has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists." *Price v. Leland*, 149 Vt. at 521 (citing *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516 (1985), *abrogation on other grounds recognized by State v. Atlantic Richfield Co.*, 2016 VT 61, 202 Vt. 212). In other words, on summary judgment, the court "must consider the facts presented in the light most favorable to the nonmoving party." *Madkour v. Zoltak*, 2007 VT 14, ¶ 12, 181 Vt. 347 (citing *Bacon v. Lascelles*, 165 Vt. 214 (1996)).

The nonmoving party "bears the burden of submitting credible documentary evidence or affidavits sufficient to rebut the evidence of the moving party." *Mahmutovic v. Salvation Army*, No. 2020-056, 2020 WL 5269952, at *2 (Vt. Sept. 4, 2020) (unpublished mem.) (citing *Ziniti v. New England Cent. R.R., Inc.*, 2019 VT 9, 209 Vt. 433). If the nonmoving party fails to address the moving party's assertion of fact as required under V.R.C.P. 56(c), the court may consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. V.R.C.P. 56(e)(2)–(3).

The determination of damages is generally a question of fact. *Post and Beam Equities Group, LLC v. Sunne Village Development Property Owners Ass'n*, 2015 VT 60, ¶ 16. That is because damages generally require a fact finder to employ their sound discretion to draw conclusions and inferences from the evidence. Id. Unless they are liquidated, damages can be inexact or imprecise and may be

21-CV-03169 The Howard Mitchell III Living Trust, Morgan Klarich, Trustee v. Ariadne Terrell

difficult to calculate. Id. at ¶ 17. In such cases, it is the purview of the fact finder, not the summary judgment motion, to weigh and review the nature, credibility, and quality of the evidence to draw out a finding of damages. Id.; see also *Martin v. Eaton*, 140 Vt. 134, 136 (1981) ("A motion for summary judgment under V.R.C.P. 56 is not a trial of the underlying merits of the case on the basis of written affidavits.").

In cases, such as the present matter, where the evidence of liability and damages involve the parties' state of mind, the Court must be cautious in reviewing the motion because the fact finder should "normally be given the opportunity to make a determination of the credibility of witnesses, and the demeanor of the witness" where "the dispositive issue requires determination of state of mind . . . ." *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 27 (quoting *Barbagallo v. Gregory*, 150 Vt. 653, 653 (1988) (mem.)).

## Factual Background

For the purposes of the present motion, the following facts are undisputed.[1]

Parshley Road is a private road that runs in a northeasterly direction from the town highway known as Eagle Hollow Road—which in turn runs north from Vermont Route 113 in the eastern side of the Town of Vershire. Plaintiff's house is located as 226 Parshley Road, approximately a quarter mile from the start of Parshley at Eagle Hollow Road. At Plaintiff's house, Parshley splits into two roads. The left fork continues in a northerly direction to properties unrelated to the present litigation. The right fork curves east, past Plaintiff's house, through a neighboring property, and then southerly across the eastern portion of Plaintiff's property. This fork then runs in a southeasterly direction across Plaintiff's property until it reaches Defendant's property where it becomes a driveway and ends at Defendant's residence, 460 Parshley Road. Defendant has a non-exclusive right-of-way for vehicular access to her property over this right fork of Parshley Road.

---

[1] The facts in this section are drawn from Plaintiff's Statement of Undisputed Material Facts contained in her Motion for Summary Judgment. This Statement was filed in compliance with V.R.C.P. 56(c)(1) and set out a concise set of facts that were supported by specific references to the record. V.R.C.P. 56(c)(5) (noting that the Court is only obligated to consider the materials cited in the required statement of fact). In this case, Defendant did not respond and did not file either an additional statement of undisputed material facts or a statement of disputed material facts. As such, Defendant has forfeited her right to contest the factual record. *Caldwell v. Champlain College, Inc.*, 2025 VT 17, ¶¶8, 9

Plaintiff's land is a 6.228-acre parcel that is irregularly shaped. The westernmost end has frontage on Parshley Road and is where Plaintiff's residence is located. A large chunk of Plaintiff's parcel sits south of this frontage and homesite, and another sizeable portion runs east from the frontage and homestead. The southeastern corner of the property between these southern and eastern portions is a concave angle that sits against the northwestern corner of Defendant's lands. Defendant's property is a more traditionally shaped parcel that resembles an octagon and contains 47.4 acres. Defendant's property is located to the south and east of Plaintiff's parcel. Defendant has a residence located within this property. Defendant does not have any road frontage but accesses her land over this right fork of Parshley Road that terminates at her property line.

*Defendant Installs a Gate on Plaintiff's Land*

In the summer of 2016, Defendant installed a locked gate across the right fork of Parshley Road at a point that was entirely on Plaintiff's property. Defendant did not ask for Plaintiff's permission to install this gate, and she refused to give Plaintiff a key to the gate. Defendant kept the gate locked at all times, except for her own purposes to enter or exit her property. The gate, as installed, effectively blocked Plaintiff's ability to directly access portions of her property beyond the gate. This included much of the eastern portions of Plaintiff's lands. The gate's location and size does not permit Plaintiff or anyone else to drive around the gate and effectively blocks all motorized access.

After Defendant installed the gate, it appears, from the record, that Plaintiff did not immediately pursue the matter but allowed Defendant to keep and maintain the gate. The gate did not prevent Plaintiff from accessing her house and immediate yard on the upper portion of Parshley Road. Until Plaintiff sought to subdivide and sell portions of her land, it appears that Defendant's actions were not a pressing issue for Plaintiff to pursue. No litigation ensued in the immediate aftermath of the gate's installation. Nevertheless, the undisputed evidence shows that between its installation in 2016 and April 2024, Defendant blocked Plaintiff from directly accessing substantial portions of her property and sections of Parshley Road by vehicle. In April of 2024, Defendant relented and gave Plaintiff a key to the gate, which has allowed Plaintiff to regain and subsequently maintain access across her property and the lower end of the right fork of Parshley Road.

*Defendant's Improperly Installed Power Line*

For several years, Defendant received electrical power from a line that ran from a utility power pole on Parshley Road., across the southern portion of Plaintiff's property, to Defendant's residence.[2] This power line sat on the ground and was neither buried, nor connected to poles that would have kept the electrical line elevated at a safe distance from individuals walking on the surface. The line, as it was laid, posed an on-going danger of serious and even fatal harm as it was a live electrical line draped on the ground without protection and even sat, from time to time, in puddles of water. Its location put the line in close proximity to Plaintiff's house. During this time, Plaintiff was unable to access the area or have contractors access the area for fear of electrocution. As a direct result, Plaintiff was unable to have large trees in this area pruned or removed. Plaintiff sought to have Defendant remove or properly install the line, but Defendant took no action to ameliorate the situation and allowed the line to remain active and on the ground.

Since it was her line, Defendant had the responsibility to either bury the line or hang the line on poles. Defendant's failure to do this constituted a breach of Vermont law and safety standards. See Vt. Admin. Code 18-1-22: 5.608(a) (requiring all line extensions to "conform to the latest edition of the National Electrical Safety Code at a minimum"). In December 2022, one of the unpruned trees in the area of the line fell on Plaintiff's house causing substantial damages. After repeated efforts to get Defendant to remedy the power line, a State-licensed electrician hired by Plaintiff found the power line to be unsafe and disconnected it in April 2024. Notwithstanding this disconnection, the now-dead power line remains in place, on the ground, on Plaintiff's property.

*Plaintiff's Efforts to Subdivide Her Lot*

In 2021, Plaintiff began to subdivide her lot into the three parcels. Ethan Gilmour, a Vermont licensed surveyor, surveyed and plotted this division and created a map of the subdivided parcels, dubbed Parcels A, B, and C. Roughly described, Parcel A is located in the northwestern part of the property and includes Plaintiff's current residence; Parcel B contains most of the eastern part of Plaintiff's parcel, and Parcel C is the southern portion of the parcel. The gate installed by

---

[2] From the exhibits, it appears that the path of this power line was consistent with an easement right held by Defendant to run a powerline directly across Plaintiff's property, separate from the Parshley Road right-of-way.

Defendant stands in the middle of Parcel A on Plaintiff's property, which means that Plaintiff's access to portions of Parcel A and all of Parcel B were obstructed by Defendant's gate.

As Plaintiff wanted to offer these parcels for sale in 2022, it became important to resolve the gate and access issue. Plaintiff needed to be able to access all of her property. When she re-initiated efforts to get a key to the gate from Defendant, Defendant continued to refuse. Plaintiff, with an on-going land dispute, with unresolved issues concerning the then-active power line, and without full access to her property, could not list or market the parcels for sale. Plaintiff's plans for sale had to be shelved and remain inactive due to the on-going uncertainty. Defendant's continuing refusal led to Plaintiff in October 2021 to file the present complaint against Defendant.

*Campaign of Harassment*

After Plaintiff approached Defendant again about the gate and filed the present lawsuit, Defendant began behaving in a hostile, aggressive manner towards Plaintiff. This included vulgar gestures, honking her car horn, making threats of physical harm, brandishing a handgun, and shouting at Plaintiff. Defendant also posted a sign on the gate that warned anyone who went past the gate would be shot.

During this time, Defendant engaged in repeated harassing behavior against Plaintiff. Defendant would drive slowly past Plaintiff's home, honking her horn, and making vulgar gestures. Defendant began leaving her home in the pre-dawn hours, driving slowly past Plaintiff's house and returning almost immediately, honking her horn each time near Plaintiff's house, which sits close to Parshley Road. This would wake Plaintiff and her family and disturb their sleep. Parshley Road is not well-travelled, and Defendant's actions stood in sharp contrast to the normal, quiet character of the road and neighborhood. These actions unsettled Plaintiff and greatly distressed and intimidated both Plaintiff and her son. The actions have made Plaintiff and her son, anxious and fearful regarding their safety. Plaintiff states that these actions have affected her ability to use and enjoy her home and property.

On October 22, 2021, Defendant passed Plaintiff on Parshley Road. As she passed, Defendant brandished a handgun to Plaintiff making it clearly visible that Defendant was armed. Shortly thereafter, Defendant also erected signage on the gate that stated Defendant would shoot any person passing beyond the gate.

*Damages*

Defendant's actions show willful and malicious intent. They did not serve any proper purpose and evinced a hostility toward Plaintiff and caused harm, anxiety, and fear to Plaintiff and her family. Plaintiff claims that these actions have resulted in substantial damages totaling $161,780.

The first part of this damage figure comes from Plaintiff's trespass and nuisance claims. Plaintiff seeks damages for Defendant's actions including blocking Plaintiff from using and accessing her own property, Defendant's campaign of harassment, and the nuisance of a live, electrical line left on Plaintiff's property. Plaintiff monetizes this damage as follows. She seeks damages in the amount of $25 per day from the summer of 2016 when the gate was erected, until the fall of 2021. From that point until the present day, she seeks damages in the amount of $50 per day for the continuing issues and the added interference with her efforts to market and sell the property. As of March 2025, Plaintiff calculated these amounts to be $46,625 and $63,875, respectively. Plaintiff considers these damages to constitute compensatory and punitive damages for Defendant's actions, but she does not distinguish which portions of these damages constitute compensatory damages, and which constitute punitive damages.

Next, Plaintiff seeks compensatory claims in the amount of $5,130 for a storage locker that Plaintiff has rented to store personal items in expectation of a move that never occurred due to Defendant's actions to thwart Plaintiff's efforts to market and sell the property. Plaintiff seeks compensation for her $350 for security camera system that Plaintiff felt she had to install to protect herself from Defendant's bad behavior. Finally, Plaintiff seeks lost business income of $41,000 and moving expenses of $4,800 that Plaintiff will incur once she sells and moves from her property to escape Defendant.

*Procedural History*

Plaintiff filed the present case on October 11, 2021. In the Complaint, Plaintiff included a claim of trespass concerning Defendant's placement of the gate and the power line. Plaintiff also made a claim of nuisance also based on the gate and power line. Plaintiff initially sought a temporary restraining order pursuant to V.R.C.P. 65. After that motion was denied on October 20, 2021, the parties drafted and entered into a Neighborhood Conduct Agreement on November 18, 2021. Pursuant to this agreement, the parties agreed to cease all harassing conduct and not engage in further harassing conduct. The Agreement contained a provision allowing either party to seek

sanctions and enforcement from the Court if the other side breached the terms. The Court incorporated the Agreement into an Order of the Court on November 23, 2021. To date, neither party has sought to invoke this Agreement, and there are no allegations of harassment or abusive behavior post-dating the adoption of this Agreement. While Defendant did not immediately turnover access to the gate at that time, she did stop her action to harass or cause distress to Plaintiff.

At the end of December 2021, Defendant filed an answer and counterclaims seeking contributions from Plaintiff for work Defendant claimed she had done to maintain portions of Parshley Road and for work that she claimed needed to be done. This document was the last filing that Defendant made in this case.

In June 2022, Defendant's attorney filed a motion to withdraw, and Plaintiff filed a motion to compel discovery responses that were past due. At a series of hearings conducted in the summer of 2022, Defendant failed to attend or respond to efforts by her attorney to contact her and engage in the litigation. On August 11, 2022, the Court ordered that Defendant be admonished and served notice that she needed to engage in the litigation or give the Court and parties clear indication of her intentions. At this time, Plaintiff filed a motion for attorney's fees to cover the costs that Plaintiff had incurred by having her counsel attend the multiple hearings that Defendant had not attended. This issue continued into the fall when Defendant was eventually served by alternative service through a tack order that was posted to her front door on October 4, 2022.

Despite this tack order, Defendant did not appear at the October 18, 2022 hearing, and her attorney's motion to withdraw was granted. The Court granted Plaintiff's motion to compel, and Defendant was given 21 days to provide answers to Plaintiff's outstanding discovery. Plaintiff's motion for attorney's fees were denied at that time, but the Court directed Plaintiff to serve her motion for contempt on Defendant.

The Court held a hearing on December 19, 2022 regarding Plaintiff's contempt motion. Plaintiff provided proof of service, but Defendant did not appear. Following this hearing, the Court on January 9, 2023 granted Plaintiff's motion for contempt and sanctions. It awarded Plaintiff her attorney's fees related to Defendant's failure to respond to discovery. It also awarded Plaintiff the

sheriff's service fees incurred.[3]  Finally, it ruled that Defendant was precluded from presenting any evidence related to the missing and unproduced discovery information.

On June 18, 2023, Plaintiff filed her first motion for summary judgment.  On July 7, 2023, Plaintiff sought permission to remove the gate across Parshley Road and the powerline laying on Plaintiff's property.  Defendant did not respond to either motion.  On January 24, 2024, the Court denied the motion for summary judgment finding that Plaintiff's filings did not provide sufficient evidence to support the undisputed material facts.  The Court set this for a jury trial in the summer of 2024, but Plaintiff requested a delay to file a new motion for summary judgment.  This time was extended through the fall of 2024.  The Court held additional status conferences, and Defendant did not appear at any of these hearings.  In March 2025, Plaintiff filed the present motions for summary judgment.  Defendant has not filed a response.  Plaintiff's present motion for summary judgment is unopposed.

## Conclusions of Law

Plaintiff's Motion for Summary Judgment is built on three arguments.

*Trespass*

First, Plaintiff argues that Defendant committed trespass by installing a gate on Plaintiff's property without Plaintiff's consent or privilege or other right to do so.

"A person who intentionally enters or remains upon land in the possession of another without a privilege to do so is subject to liability for trespass." *Moyers v. Poon*, 2021 VT 46, ¶ 30, 215 Vt. 118 (citing *Harris v. Carbonneau*, 165 Vt. 433 (1996)).  A trespass also occurs if a person fails to remove from the land a thing which he is under a duty to remove.  See RESTATEMENT (SECOND) OF TORTS § 158 (1965).  Whether the trespass causes harm to any legally protected interest of the other is immaterial.  *Id.*

An easement, in turn, is "an interest in land consisting in the right to use or control the land . . . for a specific limited purpose." *Id.* ¶ 11 (quoting *Wagner v. Crossland Constr. Co.*, 840 N.W.2d 81 (N.D. 2013)).  A right-of-way is such an easement, conveying a right of passage over another

---

[3] Plaintiff has renewed her request for these attorney's fees and costs as part of any summary judgment award and has requested that when the Court reached final judgment, it also give her attorney 20 days to file proof of reasonable attorney's fees consistent with *L'Esperance v. Benware*, 2003 VT 43, ¶ 22.

person's land. See *Hunsdon v. Farrar*, 128 Vt. 410, 414 (1970) and *Gladchun v. Eramo*, 2023 VT 5 ¶ 4, n.3, 217 Vt. 481. Exceeding the permissible use of an easement may constitute trespass. See *DeGraff v. Burnett,* 2007 VT 95, ¶ 26; see also *id.* ¶ 34 (citation omitted) (plaintiffs who possessed an easement for garage space and storage of lumber committed a trespass by making improvements on defendant's land in support of an access right they did not enjoy).

The evidence establishes that Defendant has a right-of-way to provide access to her property, and that the scope of this easement is consistent with Defendant's right to pass over Plaintiff's property via Parshley Road. The evidence further establishes that the gate installed by Defendant is undisputedly on Plaintiff's property. This gate went beyond the rights of Defendant's easement, and it effectively blocked Plaintiff from using the easement and accessing portions of her property from the summer of 2016 until the spring of 2024. As a matter of law, Defendant trespassed on Plaintiff's property as she exceeded her right-of-way by building the gate on Plaintiff's property and prevented Plaintiff from accessing property. This is sufficient to show that Plaintiff is entitled to judgment as a matter of law on her claim trespass related to the gate. Plaintiff's Motion for Summary Judgment on Count I, trespass regarding the gate, is **Granted**.

As to Defendant's power line, a similar analysis follows. Defendant had a right to run a power line across Plaintiff's property, but such a right requires the line to be either buried or hung on poles in compliance with Vermont law. See Vt. Admin. Code 18-1-22: 5.608(a) (requiring all line extensions to "conform to the latest edition of the National Electrical Safety Code at a minimum"). If the line had been properly installed, Plaintiff would have had access to the area where the line was situated and would have been able to perform repairs and maintenance and enjoyed the property. Given that the line was left on the ground, the area became a danger zone, and Plaintiff was precluded from using the general area out of safety concerns. Since 2024, this line has remained on Plaintiff's property, and Defendant has not acted to remove or remediate this line that sits on Plaintiff's property. In this respect, Defendant exceeded the permissible use of her easement, and these actions constituted trespass. *DeGraff*, 2007 VT 95, at ¶ 26. The actions also include outright trespass in that Defendant has left her property, a disconnected power line, on Plaintiff's property without permission or right. For these reasons, Plaintiff's Motion for Summary Judgment on Count I, trespass regarding the power line, is **Granted.**

*Nuisance*

Second, Plaintiff argues that Defendant's placement and use of an unprotected power line and her placement of a locked gate on Plaintiff's property each constitutes a private nuisance that substantially interferes with Plaintiff's reasonable use and enjoyment of her property.

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Post & Beam Equities Grp., LLC*, 2015 VT 60, at ¶ 24 (citing RESTATEMENT (SECOND) OF TORTS § 821D). It requires a substantial and unreasonable interference with such use and enjoyment. *Jones v. Hart*, 2021 VT 61, ¶ 30 (citing *Post & Beam Equities Grp., LLC*, 2015 VT 60, at ¶ 24). An interference is substantial if it exceeds "the customary interferences a land user suffers in an organized society," and unreasonable if "the gravity of the harm outweighs the utility of the actor's conduct." *Id.* ¶ 26 (internal citations omitted). Further, for an interference to be substantial, it must be shown that the plaintiff "suffered harm to 'the actual present use of land' or to 'interests in having the present use value of the land unimpaired by changes in its <u>physical</u> condition.'" *Myrick v. Peck Elec. Co.*, 2017 VT 4, ¶ 5, 204 Vt. 128 (citing RESTATEMENT (SECOND) OF TORTS § 821D cmt. B) (emphasis in original). A plaintiff claiming a nuisance has to demonstrate actual and substantial injury. Emotional distress is not considered an interference with the use or enjoyment of land. *John Larkin, Inc. v. Marceau*, 2008 VT 61, ¶ 10, 184 Vt. 207 (citation omitted) and *Myrick*, 2017 VT 4, ¶ 5 (citation omitted).

The evidence establishes that the installation or connection of the live power line running across Plaintiff's yard was not compliant with the Vermont Code and that it posed an immediate danger and risk of serious bodily harm or death. Regardless of whether Defendant had an easement to run electricity across Plaintiff's land, an illegal and extremely dangerous power line exceeds customary interferences of a land user, and the gravity of an immediate danger of serious bodily harm or death certainly outweighs the utility of Defendant's conduct. The power line has been disconnected since April 2024, but the equipment is still in place, and nothing indicates that Defendant could not reconnect it. In this respect, Plaintiff's claim, and the Court's analysis is not on the actual power line itself but on the dangers created by an illegal electrical line and the interference that results from having a dangerous items laid across another's property. For these reasons, the Court finds that Defendant created a substantial and unreasonable interference with Plaintiff's property through the live electrical line, which Defendant placed on Plaintiff's property and refused

to correct, turn off, or remediate. Plaintiff' Motion for Summary Judgment on Count II nuisance from a live electrical power line is **Granted.**

The Court finds Plaintiff's arguments concerning the gate to be similarly persuasive. In addition to its placement, the gate effectively kept Plaintiff from accessing portions of her property for nearly eight years. It also prevented Plaintiff from completing her subdivision and plans to sell portions of the property to third parties. There is no evidence that Defendant could not have located the gate entirely on her property. In fact, such placement would not only have been eminently reasonable, but it would have avoided the question of shared access. Instead, Defendant unilaterally elected to put the gate on another person's property and effectively cut off her neighbor's rights and ability to access her own property. The placement of the gate and the accompanying refusal to give Plaintiff access substantially and unreasonably interfered with Plaintiff's use of her own property, and it constitutes a private nuisance in addition to a trespass. Plaintiff's Motion for Summary Judgment on Count II nuisance regarding the gate is **Granted.**

*Harassment*

Third, Plaintiff argues that Defendant's "harassing activity" constitutes private nuisance. The court is guided in its analysis for this claim by the Vermont Supreme Court's decision in *Jones v. Hart*, 2021 VT 61. There, the Vermont Supreme Court held that "a sustained and intentional campaign to annoy a neighbor by interfering with the use and enjoyment of the neighbor's property can amount to a private nuisance." *Id.* ¶ 29. The emphasis in the Supreme Court's analysis is on sustained and unreasonable interference with the use of land. Id. at ¶¶26–30. This is because nuisance law does not concern "trifles, or seek to remedy all the petty annoyances of everyday life . . . ." Id. at ¶ 30 (quoting *Rattigan v. Wile*, 841 N.E.2d 680, 686 (2006)). There are always "unavoidable clashes" and risks and harms, but liability and damages only flow when the harm or risk sustained is greater than any one person should bear under the circumstances. Id. (quoting Restatement (Second) of Torts § 822 cmt. g (1979)).

In *Jones*, the Supreme Court concluded that considering the totality of the circumstances, there was sufficient evidence for a jury to find that the Joneses' conduct over a six-year period amounted to a private nuisance. This conduct had made Hart uncomfortable and fearful for his physical safety while he was on his property and had included: (1) threatening to hire a hitman to kill him, (2) menacingly approaching him with a shovel, (3) hitting his feet with a shovel, (4) throwing

snow at his face, (5) knowingly and repeatedly interfering with Hart's ability to plow his driveway, (6) shoveling in violation of court orders, and (7) intentionally parking their motorhome in the right-of-way to annoy Hart and interfere with his access to the property. *Id.* ¶¶ 42, 43, 47, 49.

Based on the evidence presented by Plaintiff in this case, Defendant's conduct—as offensive as it may be—does not, by itself, rise to the level of substantial and unreasonable conduct that would trigger private nuisance liability or meet the factual standard shown in *Jones*. Specifically, the evidence shows that while the disagreement about the gate started in 2016 or 2017, there was no harassment at that time. Tensions between the parties appear to have largely frozen after the installation. Until Plaintiff began to subdivide her property, there is no evidence of any sustained or continuing harassment or interference beyond the gate or the power line. In October of 2021, Defendant's conduct briefly flared up, particularly after Plaintiff filed the present complaint. This behavior, however, ended when Defendant entering into the Good Neighborhood Agreement in November of 2021, and there is no evidence that it has ever re-started. Without downplaying Defendant's act of brandishing a handgun, her threatening behavior was much more limited in scope and time, than what the Court found in *Jones*. As such, the Court finds Plaintiff's claims seeking nuisance damage from Defendant's harassing behavior to be insufficient as a matter of law, and the Court declines to extend a finding of nuisance to these actions as a separate cause of action beyond the gate and power line nuisance findings.[4]

*Damages and Remedies*

The final question given the Court's conclusions that Defendant Terrell committed trespass and created private nuisances on Plaintiff Klarich's property is what damages reasonable flow from these actions. Under the theory of trespass, Plaintiff is entitled to injunctive relief to physically remove the trespassing items. *John Larkin, Inc. v. Marceau*, 2008 VT 6, ¶ 9 (noting that "Plaintiffs showing a direct and tangible invasion of their property may obtain injunctive relief and at least nominal damages without proof of any other injury."). Under the theory of nuisance, Plaintiff must demonstrate actual and substantial injury. Id. at ¶ 10. Such injuries can include evidence of

---

[4] With this finding the Court need not analyze whether Plaintiff's claims in this area go beyond the pleadings and would require an amendment. V.R.C.P. 15. As well, nothing in the Court's analysis lessens the fact that these actions are relevant and inform the Court's conclusions on Plaintiff's trespass and other nuisance claims. These actions demonstrate evidence of an intent to deprive and to inflict harm on Plaintiff. The conclusion here is that the harassing actions do not in and of themselves constitute a nuisance issue given their limited scope and duration.

annoyance, discomfort, and inconvenience. *Jones*, 2021 VT 61, at ¶ 58 (citing *Coty v. Ramsey Associates, Inc.*, 149 Vt. 451, 464 (1988)).

The difference in these damages rests with the conceptual differences between trespass and nuisance. *John Larkin, Inc.*, 2008 VT 6, at ¶¶ 9–17. Trespass is traditionally a physical invasion, a tangible invasion by one party into the property of another. Id. Nuisance is historically a non-tangible invasion. It can encompass sound, dust, gas, or other invisible particulates. Id. As such, the very fact that a trespass established, demonstrates the harm that has been done. *John Larkin, Inc.*, 2008 VT 61, at ¶ 9. In the case of a nuisance, proof that a nuisance exists is not necessarily proof that harm has occurred. See Pierce v. Riggs, 149 Vt. 136, 140 (1987) (noting the range of available damages for a nuisance claim). With this in mind, the Court will examine Plaintiff's damage and remedy requests individually.

First, Plaintiff seeks injunctive relief to remove the two trespassing items that Defendant placed on Plaintiff's property—the gate and the power line. As the Court has found both items to constitute trespass, Plaintiff is entitled to this relief, and the Court orders that Plaintiff is authorized to remove these items at Defendant's expense. Plaintiff's request for injunctive relief is **Granted.**

The second set of damages involve monetary awards for compensatory damages and punitive damages. The compensatory damages sought may be further divided into economic damages for out-of-pocket or expected out-of-pocket damages and non-economic damages arising from the trespass and negligence claims and reflecting the impacts that Defendant's actions had on Plaintiff and what inconvenience and discomfort she has incurred as a result. As noted above, the problem with reviewing these damages on a motion for summary judgment is that the Court is put in a position of weighing and trying the quality of Plaintiff's evidence. Plaintiff states that she believes she has been harmed by Defendant's actions to the amount of $25 dollars per day from 2016 to 2021, and from then forward in the amount of $50 per day. These statements are not sufficient to establish an undisputed material fact of Plaintiff's damages. They provide Plaintiff's belief, but they are not anchored to an objective or even readily available standard. To accept, reject, or modify Plaintiff's damage request, the Court would have to weigh the evidence, assign credibility, and make findings. This goes beyond the scope of summary judgment. *Post and Beam Equities Group, LLC*, 2015 VT 60, ¶ 16. For this reason, the Court cannot grant Plaintiff's motion for summary judgment on the issue of non-economic monetary damages but must defer this decision to a fact finder.

As to Plaintiff's request for future lost income and moving costs, the court notes that Plaintiff must show that such damages are the direct, necessary, and probable result of Defendant's act. See, e.g. *Langlois v. Town of Proctor*, 2014 VT 130, ¶ 45, 198 Vt. 137 (citation omitted); see also *Kelly v. Univ. of Vermont Med. Ctr.*, 2022 VT 26, ¶ 32, 216 Vt. 445 (citation omitted) ("An injury based on speculation about uncertain future events is no injury at all."). Such substantial factual issues are also not susceptible of determination in a summary judgment proceeding.

This leaves only the issue of Plaintiff's out-of-pocket expenses for the storage unit and the security cameras. The Court finds the deciding such damages without making findings on the other monetary damages would improperly parse the process of determining damages and run the risk of invading the purview of the fact finder. For these reasons, the Court will not make a determination on whether these damages should be awarded but will leave it to the fact finder to decide.

Based on the foregoing, the Court finds that the issue of damages involves necessary findings of fact that render it inappropriate for summary judgment, and the Court **Denies** summary judgment on Plaintiff's request for monetary damages at this time but will set this matter for a final trial on these remaining issues.

## ORDER

The Court **Grants** Plaintiff's Motion for Summary Judgment **in Part** and **Denies in Part.** Plaintiff is granted Summary Judgment on her claims of Trespass and Nuisance for the gate and power line. The Court further grants summary judgment on Plaintiff's request for injunctive relief and authorizes Plaintiff to remove the power line and gate on her property. The Court further assigns the costs for such removal to Defendant.

While the Court has denied Plaintiff's motion for summary judgment on damages, the matter is ripe for adjudication on this last issue. To that end, the Court will schedule this matter for a pre-trial status conference and discuss with the parties the remaining issues. The Court understands that this would include whether the remaining damages claims should be tried to a jury or if the parties would agree to a bench trial.

The Court will also seek a timeline for such a hearing where Plaintiff will be prepared to put forward evidence of the costs of removing the gate and power line as well as evidence of Plaintiff's attorney's fees that were previously awarded. The Court will also expect to take up the issue of

Defendant's counterclaims and whether such claims should be dismissed because of Defendant's non-involvement in this case. V.R.C.P. 41(b).

Electronically signed on 5/30/2025 2:52 AM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge